## Richmond.

NORFOLK AND CAROLINA RAILROAD Co. v. SUFFOLK LUMBER Co.

### JANUARY 9, 1896.

1. PLEADING—*Conditions Performed—Non Damnificatus—What Must Be Averred.*—As a general rule, a plea of conditions performed must aver specifically the time, place, and manner of performance, and though the subject to be performed consists of several different acts, yet performance of each must be averred; and a general averment of performance will not be sufficient. And the same is true of a plea of *non damnificatus.*

2. RAILROADS—*Crossing Each Other's Tracks at Grade—Trespasser—Covenant—Action on the Case.*—If one railroad company is permitted to cross the track of another at grade on terms of a written covenant between them, the first-mentioned company cannot, in an action on the covenant, be considered as a trespasser or wrong-doer in making such crossing; but, if there has been a breach of the covenant and resulting damages, the liability of the defendant company is fixed by the covenant. If the defendant company has so far failed in the performance of its covenants as not to entitle it to claim the benefits of it, it becomes a licensee or trespasser, as the case may be, and the plaintiff may bring an action on the case for any injury inflicted on it through the negligence of the defendant, and the question will then be, what constituted negligence on the part of the defendant, and what, if any, duty the plaintiff owed it.

3. RAILROADS—*Grade Crossings—Covenant—Injury—Proximate and Remote Causes.*—Under the terms of the contract in suit the defendant is responsible for all injuries sustained where its acts of omission or commission, which it covenanted to perform or refrain from, were the proximate cause of the injury inflicted; but where its conduct was not the proximate, but only the remote cause or condition of the accident complained of, and where the acts of the plaintiff, or its omission of ordinary care, constituted the immediate or proximate cause of the injury, then the wrong was self-inflicted, and there can be no recovery. The defendant was not a mere trespasser.

4. RAILROADS—*Accident—Statements of Conductor—Res Gestæ.*—The statements of the conductor of a train, made an hour after an accident to his train, as to the particulars of the accident, cannot be given in evidence in a suit against the company. They are no part of the *res gestæ*, and cannot be given in as admissions of the company.

5. RAILROADS—*Evidence—Opinion on Hypothetical Case as to Cause of Accident*—The expression of a mere opinion of a witness, as to whether or not the accident which is the subject of investigation would or would not have happened under supposed circumstances, cannot be given in evidence against the defendant in a suit to recover damages for an injury inflicted by such accident.

Error to a judgment of the Corporation Court of the city of Norfolk, rendered July 22, 1892, in an action of covenant, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

This was an action to recover damages for breach of covenant. During the progress of the trial the defendant tendered eleven pleas to each count of the declaration, the rulings upon which by the trial court are noticed in the opinion of this court. The second, third, fifth, and eleventh of these pleas to the first count—those to the second count being substantially the same—are as follows:

### Second Plea to First Count.

"And the said defendant, by its attorney, comes and defends the wrong and injury, when, &c., and says that the said plaintiff ought not to have or maintain its aforesaid action thereof, in the first count in the declaration mentioned, against the said defendant, because the said defendant says that the alleged collision, in the said first count mentioned, did not happen by reason of any breach, or alleged breach, of the covenants, conditions, or agreements, or any or either of them, or of any or either of them, in the said first count of the declaration mentioned, but that the proximate cause thereof

was the negligence and want of ordinary care of the said plaintiff, in approaching with its train the said point of collision, at the time mentioned and alleged as the time of said collision in the said first count of the declaration, in this, to-wit: that after the said plaintiff knew of the acts and omissions complained of in said first count of the declaration, as constituting the negligence and improper conduct on the part of the said defendant, the said plaintiff might and could have avoided the said collision by stopping its said train, as aforesaid, approaching the said point of collision, and before reaching said point, and could have stopped the same by the use of ordinary care and diligence, but it utterly failed to use such ordinary care and diligence and to stop its said train, whereby said collision occurred; and the said defendant says that, if it had not been for such negligence and want of ordinary care on the part of the said plaintiff, the said collision would not have occurred, and that the said defendant could not, after becoming aware of the said negligence and want of proper care on the part of the plaintiff, avoid the consequence and avert the said collision.   And this the defendant is ready to verify."

### *Third Plea to First Count.*

" And the said defendant, by its attorney, comes and defends the wrong and injury, when, &c., and says that the said plaintiff ought not to have or maintain its aforesaid action thereof, in the first count of the declaration mentioned, against the said defendant, because the said defendant says that the alleged collision, in the said first count mentioned, did not happen by reason of any breach, or alleged breach, of the covenants, conditions, or agreements, or any or either of them, or of any or either of them, in the said first count of the declaration mentioned, but that the said plaintiff contributed, by its own negligence and want of proper care and prudence, to the

said injury of which complaint is made in said first count of the said declaration, so.that, but for the said concurring and co-operating fault of the said plaintiff, the said collision and injury would not have happened to the said plaintiff, in this, to-wit: that after the said plaintiff knew of the acts and omissions complained of in the said first count of the said declaration, as constituting the negligence and improper conduct on the part of the said defendant, the said plaintiff, by the exercise of proper care and diligence on its part, might and could have avoided the said collision by stopping its said train when as aforesaid approaching said point of collision, and before reaching the same, but it utterly failed to use such proper care and diligence and to stop its said train, whereby said collision occurred; and the said defendant says that, if it had not been for such negligence and want of ordinary care on the part of said plaintiff, the said collision would not have occurred, and that the said defendant could not, after becoming aware of the said negligence and want of proper care on the part of the said plaintiff, avoid the said consequences thereof and avert the said collision. And this the said defendant is ready to verify."

### *Fifth Plea to First Count.*

"And the said defendant, by its attorney, comes and defends the wrong and injury, when, &c., and says that as to the said supposed breach of covenant, in the first count of the declaration of the plaintiff assigned, the plaintiff ought not to have or maintain his action against the defendant, because he says that the collision alleged in said first count to have occurred on the 6th day of June, 1890, did not occur by reason of the alleged non-compliance by the defendant with the agreements or conditions, or any of them, set out in said declaration, but occurred solely through the negligence and want of ordinary care with which the said plaintiff operated its said road.

And the defendant further says that the said plaintiff, on the said 6th day of June, 1890, and long prior thereto, knew that at the said Station 597–17 there was no signal-post, and no watchman or flagman to give signals to approaching trains, and yet the said plaintiff and its agents, well knowing that there was no signal-post, or watchman, or flagman at said station, consented to the absence thereof, and permitted the said defendant to use said crossing without said signal-post, watchman, or flagman, and on the said 6th day of June, 1890, a train of the said defendant was approaching the said crossing, and gave due notice and signal of its approach by whistling, and that the said signal of whistling of the defendant's train was heard by the conductor and engineer and others, agents of the plaintiff, who were on and in charge of said train of the said plaintiff, which was also approaching said crossing, but was at a much greater distance therefrom than the said train of the defendant; that the said train of the said plaintiff was run in a negligent manner, and did not have the proper appliances for stopping or controlling the same, nor did it have a sufficient force of men for its proper management; and that the said conductor, engineer, and other agents of the said plaintiff, well knowing that there was no signal-post, or watchman, or flagman at said crossing, and well knowing that the train of the plaintiff which they had in charge did not have the proper appliances for stopping or controlling said train, and well knowing that they did not have a sufficient force of men for its proper management, and hearing the signal or whistle of the train of the said defendant approaching said crossing, did not stop the train of the said plaintiff, nor did they, or any of them, cause the said train of the said plaintiff to slow up, nor did they, or any of them, attempt in any manner to get the said train of the said plaintiff under control, but, on the contrary, the said train of the said plaintiff wrongfully and negligently, and without

being under proper control, proceeded and approached at a high rate of speed the said crossing, while the train of the defendant was on the same, and in the act of crossing the same, whereby the collision referred to in the first count of the declaration of the plaintiff occurred. And the defendant further says that the said collision occurred by reason of the negligence and want of ordinary care on the part of the said plaintiff and its agents, and that the same could not have, in the exercise of ordinary care and diligence by the defendant and its agents, been averted. And the defendant says that if the plaintiff has been damnified by reason of the said collision, it has been so damnified by its own act and the act of its agents, and by its and its agents' wrong. And this the defendant is ready to verify."

### Eleventh Plea to the First Count.

" And the said defendant, by its attorney, comes and defends the wrong and injury, when, &c., and says that the said plaintiff ought not to have or maintain its aforesaid action thereof, in the first count of the declaration mentioned, against the said defendant, because the said defendant says that the alleged collision in the first count mentioned did not happen by reason of any breach, or alleged breach, of the covenants, conditions, or agreements, or any or either of them, or of any or either of them, in the said first count of the declaration mentioned, but that the proximate cause thereof was the negligence and want of proper care of the said plaintiff in approaching with its train the said point of collision at the time mentioned and alleged in the said first count of the declaration as the time of said collision, in this, to-wit: that the said alleged agreement in the said first count of the declaration mentioned was made and entered into on the 1st day of August, 1889, and that the said defendant had been, with the knowledge and acquiescence and without objection on the part

of the said plaintiff, habitually operating its road over the said crossing at Station 597–17, without the provision and erection of any signal-post thereat, and without any watchman or flagman at said crossing, and the provisions and requirements of the said agreement in reference to such signal and in reference to such watchman or flagman, to be done and performed on the part of the said defendant, were entirely ignored and dispensed with by the said plaintiff, all of which the said plaintiff knew at and before the time of said alleged collision, and it was the duty of the said plaintiff in approaching the said crossing with its trains to have the same provided with proper appliances for the ready and prompt stopping of the same, and to have the same properly manned, and to approach said crossing with proper care and caution and at a slow rate of speed, and to have the said train under control, so that it might be promptly stopped if it should become necessary; but, on the contrary, that the said plaintiff, in approaching the said point of crossing at the time when said collision in the first count of the declaration mentioned is alleged to have occurred, approached the said crossing with its train at a high and unreasonable rate of speed, without having its train equipped with the proper appliances for stopping the same promptly and easily, without having it properly manned, and without having it under control, so that it might be promptly and easily stopped; and that if the said plaintiff had been approaching the said crossing at the time aforesaid at a proper rate of speed, with its train properly manned, provided with such proper appliances as aforesaid, and having the same under control as aforesaid, the said plaintiff, after the said plaintiff became aware that the train of the defendant was approaching said crossing and was proceeding to cross the same without stopping and without giving the right-of-way to the said train of the plaintiff, might and could have avoided said collision, by stopping the said

train when, as aforesaid, approaching the said point of collision, and before reaching such point, and could have stopped the same by the use of proper care and diligence; but it utterly failed to use such care and diligence and to stop its said train, whereby said collision occurred ; and the defendant says that, if it had not been for such negligence and want of proper care on the part of the said plaintiff, the said collision would not have occurred, and that the said defendant could not, after becoming aware of the said negligence and want of proper care on the part of the said plaintiff, avoid the said consequence thereof and avert the said collision. And the said defendant further says that the said defendant did not know, or have reason to know, when about to cross said crossing, on the 6th day of June, 1890, at the time alleged in the said first count of the declaration as the time of said collision, that the said train of the said plaintiff had then reached, or was in the act of reaching, the said crossing at Station 597–17, desiring to make use thereof. And this the defendant is ready to verify."

After all the evidence had been introduced, the plaintiff tendered seven instructions, to which the defendant objected, but which the court gave, with the modifications indicated below ; and the defendant tendered Instructions A, B, C, D, E, and F, to which the plaintiff objected, and which the court refused to give. The ruling of the court on these instructions was excepted to by the defendant. The instructions were as follows :

### *Plaintiff's Instructions.*

" No. 1. The court instructs the jury that under the contract or agreement in writing entered into between the plaintiff and the defendant, mentioned and referred to in the declaration, and offered in evidence before the jury, and the

true construction, intent, and meaning thereof, the several matters and things stated and set forth and required in the seventh and eighth sections or conditions of the said contract or agreement, to be kept, done, and performed by the defendant, are conditions precedent to the enjoyment of the privilege by the defendant of crossing the road and track of the plaintiff, and were to be kept, done, and performed by the defendant before its right to cross said road and track arose, and were to be kept, done, and performed whensoever and as often as the said privilege of crossing was used and enjoyed.

"No. 2. The court instructs the jury that mere knowledge on the part of the plaintiff that the defendant had not put up a signal-post with proper signals at the crossing in question, and did not have a watchman or flagman at said crossing to give signals to approaching trains and locomotives, as required by the seventh clause or condition of the contract, did not constitute any waiver by the plaintiff of the said clause or condition and the contract requiring such signal-post with proper signals, and such watchman or flagman to give signals to approaching trains and locomotives, from the defendant; and, if the said defendant had been habitually using the said crossing without stopping (as claimed by the defendant, but denied by the plaintiff), and the plaintiff knew of it (as claimed by the defendant, but denied by the plaintiff), that it would not constitute any waiver by the plaintiff of the eighth clause or condition of the said contract requiring the defendant 'to cause all of its trains, whether regular or irregular, locomotives, and cars to approach said crossings with caution, and at a rate of speed not exceeding five miles per hour, and to require its conductors, engineers, and other persons having charge of its trains, locomotives, and cars not to cross the railroad and track of the said party of the first part until he has first positively stopped such train, locomotives, or cars, and not to proceed to cross until he has been

notified by such watchman or flagman that the track is clear, and that he can proceed to cross, and has satisfied himself beyond a doubt that the signal on the signal-post has been placed in accordance with the prescribed rules, so as to permit the passage of the trains of the said party of the second part'; and requiring further, 'in case trains of the party of the first part and the party of the second part reach the said points of crossings and connections at the same time, and desire to make use thereof, the trains of similar class of the party of the first part shall have the preference over the trains of the party of the second part (passenger over passenger and freight over freight), passenger trains of either party to have' preference over freight trains of either party'; and if the jury believe from the evidence that there was a violation of the aforesaid conditions by the defendant, and that the defendant used the said crossing without having complied with the same, then such violation was a wrong to the plaintiff, and constituted the defendant a trespasser upon the road and right-of-way of the plaintiff.

" And the court further instructs the jury that the said crossing was a private crossing, and the plaintiff had a right to have the same free and unobstructed for its trains and the purposes of its business; and if the jury believe from the evidence that the defendant did not leave the said crossing free and unobstructed for the plaintiff's train, but proceeded across the said crossing with its train, and that the plaintiff's train ran into the defendant's train so proceeding across the said crossing, sustaining thereby great loss and damage, then the plaintiff is entitled to recover of the defendant the loss and damage sustained by it from the collisions in question, unless the plaintiff, after discovering the trespass committed and the defendant's train on the crossing, or at the crossing, and proceeding to cross so as to show its probable intention to cross, could have stopped its train and averted the accident,

and was guilty of gross negligence in failing to make ordinary efforts to stop its train and avert the accident.

" No. 3. The court instructs the jury that, under the contract or agreement between the plaintiff and the defendant upon which this action is instituted, and in evidence before the jury, the defendant had the right to use the crossing in question only on condition of its erecting a signal-post with proper signals and keeping a watchman or flagman there to give signals to trains and locomotives approaching said crossing, and approaching with caution and stopping before crossing, and giving precedence to trains of like class of the plaintiff; and if it failed to comply with the said conditions, or any of them, it had no right upon said crossing ; and if it used the said crossing without having complied with said conditions, or any of them, it was a trespasser upon the property of the plaintiff, and unless the plaintiff, after discovering the trespass committed, and the defendant's train on the crossing, or at the crossing, and proceeding to cross so as to show its probable intention to cross, could have stopped its train and averted the accident, and was guilty of gross negligence in failing to make ordinary efforts to stop its train and avert the accident, the plaintiff is entitled to recover.

" No. 4. The court instructs the jury that, as to any negligence charged by the defendant against the plaintiff as causing or-contributing to the collisions in question, the plaintiff can be chargeable only with negligence which must be gross, and which must have been committed by the plaintiff or its agents after discovering the defendant's train on the crossing, or at the crossing, and proceeding to cross so as to show its probable intention to cross.

" No. 5. The court instructs the jury that, in considering whether the Suffolk Lumber Company used ordinary care and diligence to stop its train after discovering the Norfolk and Carolina Railroad train on the crossing, or at the crossing,

and proceeding to cross so as to show its probable intention to cross, the Suffolk Lumber Company or its agents would not be chargeable with any excitement consequent upon or naturally arising from the dangerous position in which the Suffolk Lumber Company's train was placed by the Norfolk and Carolina train, if the jury should think the Suffolk Lumber Company's train was so placed in a dangerous position by the said Norfolk and Carolina train.

" No. 6. The court instructs the jury that if they believe from the evidence that the train of the Suffolk Lumber Company could not have been stopped by ordinary care and diligence after discovering the train of the Norfolk and Carolina Railroad Company on the crossing, or at the crossing, and proceeding to cross so as to show its probable intention to cross, then the question of any negligence on the part of the Suffolk Lumber Company, or its agents, does not rise.

" No. 7. The court instructs the jury that if they believe from the evidence that the collision was unavoidable by the exercise of ordinary care by the Suffolk Lumber Company, after discovering that the train of the Norfolk and Carolina Railroad Company was on the crossing, or at the crossing, and proceeding to cross so as to show its probable intention to cross, by reason of the situation of peril into which the Norfolk and Carolina Railroad Company, by its own neglect, had placed the Suffolk Lumber Company, then the Norfolk and Carolina Railroad Company must be considered as the party solely in fault, and as the author of the misfortune to the Suffolk Lumber Company."

And the court thereupon granted the same, with the following modifications to be read as a part of each of the said instructions :

" Instructions 1, 2, 3, 4, 5, 6, and 7, granted to the plaintiff, are subject to this modification : But if the jury should

believe from the evidence that the plaintiff knew and acquiesced in an habitual violation of conditions 7 and 8 of the contract by the Norfolk and Carolina Railroad Company, and knew and acquiesced in habitual crossing of this crossing by the Norfolk and Carolina Railroad Company without stopping, and that the provisions and requirements of the said contract to be done and performed by the Norfolk and Carolina Railroad Company were entirely ignored and dispensed with by the Suffolk Lumber Company (and to warrant such a conclusion the testimony should be strong and convincing, in order to rebut and destroy the effect of the sealed contract), in that event, in determining whether the Suffolk Lumber Company was guilty of contributory negligence, the jury may consider whether in their judgment, from the evidence, the Suffolk Lumber Company should have had, in addition to the steam brakes on their locomotives and tender, brakes on its log cars, and additional men to man them, and should have been going at a slower rate of speed. But unless the jury should believe from the evidence that the plaintiff knew and acquiesced in an habitual violation, as aforesaid, of conditions 7 and 8 of the contract, and knew and acquiesced in an habitual crossing of this crossing by the Norfolk and Carolina Railroad Company without stopping, and that the provisions and requirements of the said contract were entirely ignored and dispensed with by the Suffolk Lumber Company, then the Suffolk Lumber Company was under no obligation to the Norfolk and Carolina Railroad Company to take any antecedent precautions in respect to its road as to brakes, or speed, or otherwise, but could be held only to any contributory negligence arising after discovering the Norfolk and Carolina train on the crossing, or at the crossing, and proceeding to cross so as to show its probable intention to cross ; and as to that the principles have been announced in the previous instructions granted to the plaintiff."

" And thereupon the defendant, by its counsel, objected to the granting of each one of the said instructions in the form given by the court, and also objected to the fact that the said modification was not written out in connection with and as a part of each of said instructions, although read by the court to the jury in connection with each instruction and as a part of each, and directed by the court to be read by the jury from a separate piece of paper in connection with each one of said instructions."

## *Defendant's Instructions.*

### *"A."*

" The court instructs the jury that, although they may believe that the alleged agreement mentioned in the declaration was made and entered into between the parties to this action as therein alleged, yet, if they further believe that the said defendant had been, prior to the collision of June 6, 1890, with the knowledge and acquiescence and without objection on the part of the plaintiff, habitually operating its road over the crossing at which the collision occurred, without the provision and erection of any signal-post thereat, and without any watchman or flagman at said crossing, and without stopping its train before proceeding to cross said crossing, and that the provisions and requirements of the said agreement, to be done and performed on the part of the said defendant, were tacitly ignored and dispensed with by the said plaintiff, and that the said plaintiff knew of this course of conduct on the part of the said defendant prior to the said collision of June 6, 1890, it was the duty of the said plaintiff, in approaching the said crossing with its trains, to have the same provided with proper appliances for the ready and prompt stopping of the same, and to have the same properly manned, and to approach the said crossing with proper care

and caution, and at a prudent rate of speed, and to have their said train under control, so that it might be promptly stopped if it should become necessary.

" And if the jury further believe that the said plaintiff, in approaching the said point of collision, at the time of the said first collision, approached the said crossing with its train at a high and unreasonable rate of speed, without having its train equipped with the proper appliances for stopping the same promptly and easily, without having it properly manned, and without having it under control, so that it might be promptly and easily stopped, and that if the said plaintiff had been approaching the said crossing at the time aforesaid at a proper rate of speed, with its train properly manned, provided with such proper appliances as aforesaid, and having the same under control as aforesaid, the said first collision could have been avoided by the said plaintiff, and that the said defendant could not, after becoming aware of the said negligence and want of proper care on the part of the said plaintiff, have avoided the consequences thereof, and averted the said collision, then they must find for the defendant on the first count of the said declaration."

## "*B.*"

" The court instructs the jury that, although they may believe from the evidence that the said agreement mentioned in the declaration was made and entered into as therein alleged, yet, if they further believe from the evidence that the said defendant had been, prior to the collision of June 26, 1890, with the knowledge and acquiescence and without objection on the part of the plaintiff, habitually operating its road over the said crossing, without the provision and erection of any signal-post thereat, and without any watchman or flagman at said crossing, and that the provisions and requirements of the said agreement, to be done and performed by the

said defendant in this regard, were tacitly ignored and dispensed with by the said plaintiff, and that the said plaintiff knew, at and before the time of the said second collision, of this conduct on the part of the said defendant, then it was the duty of the said plaintiff, in approaching the said crossing with its trains, to have the same provided with proper appliances for the ready and prompt stopping of the same, and to have the same properly manned, and to approach said crossing with proper care and caution, and at a prudent rate of speed, and to have their said train under control, so that it might be promptly stopped if it should become necessary.

"And if the jury further believe from the evidence that the said defendant, before attempting to cross said crossing on the said 26th day of June, 1890, did bring its train to a full stop and send men ahead to said crossing, and that the said men went to the said crossing and looked up the said track of the plaintiff in the direction from which the train of the plaintiff afterwards came, and that the said train of the plaintiff was not then in sight, or was so far distant from said crossing that, if the said plaintiff had then had the proper appliances for stopping its train and had the same properly manned, the said plaintiff could have then stopped its said train before reaching the said crossing, and that the said plaintiff approached the said crossing with its train at a high and unreasonable rate of speed, without having its train equipped with the proper appliances for stopping the same promptly and easily, without having it properly manned, and without having it under control, so that it might be promptly and easily stopped, and that if the said plaintiff had been approaching the said crossing at the time aforesaid at a proper rate of speed, with its train properly manned, provided with proper appliances as aforesaid, and having the same under control as aforesaid, the plaintiff could have avoided said collision by the use of ordinary care and

diligence, but that it failed to use such care and diligence, and to stop its said train, and that the said defendant could not, after becoming aware of such negligence and want of proper care on the part of the said plaintiff, avert the said collision, then they must find for the defendant on the second count of the declaration."

## "C."

" The court instructs the jury that, although they may believe that the alleged agreement mentioned in the declaration was made and entered into between the parties to this action as therein alleged, yet, if they further believe that the said defendant had been, prior to the collision of June 6, 1890, with the knowledge and acquiescence and without objection on the part of the plaintiff, habitually operating its road over the crossing at which the collision occurred, without the provision and erection of any signal-post thereat, and without any watchman or flagman at said crossing, and without stopping its train before proceeding to cross said crossing, and that the provisions and requirements of the said agreement, to be done and performed on the part of the said defendant, were impliedly ignored and dispensed with by the said plaintiff, and that the said plaintiff knew of this course of conduct on the part of the said defendant prior to the said collision of June 6, 1890, it was the duty of the said plaintiff, in approaching the said crossing with its trains, to have the same provided with proper appliances for the ready and prompt stopping of the same, and to have the same properly manned, and to approach the said crossing with proper care and caution, and at a prudent rate of speed, and to have their said train under control, so that it might be promptly stopped if it should become necessary.

" And if the jury further believe that the said plaintiff, in approaching the said point of collision, at the time

of the said first collision, approached the said crossing with its train at ·a high and unreasonable rate of speed, without having its train equipped with the proper appliances for stopping the same promptly and easily, without having it properly manned, and without having it under control, so that it might be promptly and easily stopped, and that if the said plaintiff had been approaching the said crossing at the time aforesaid at a proper rate of speed, with its train properly manned, provided with such proper appliances as aforesaid, and having the same under control as aforesaid, the said first collision could have been avoided by the said plaintiff, and that the said defendant could not, after becoming aware of the said negligence and want of proper care on the part of the said plaintiff, have avoided the consequences thereof and averted the said collision, then they must find for the defendant on the first count of the said declaration."

## " *D.* "

" The court instructs the jury that, although they may believe from the evidence that the said agreement mentioned in the declaration, was made and entered into as therein alleged, yet, if they further believe from the evidence that the said defendant had been, prior to the collision of June 26, 1890, with the knowledge and acquiescence and without objection on the part of the plaintiff, habitually operating its road over the said crossing, without the provision and erection of any signal-post thereat, and without any watchman or flagman at said crossing, and that the provisions and requirements of the said agreement, to be done and performed by the said defendant in this regard, were impliedly ignored and dispensed with by the said plaintiff, and that the said plaintiff knew, at and before the time of the said second collision, of this conduct on the part of the said defendant, then it was

the duty of the said plaintiff, in approaching the said crossing with its trains, to have the same provided with proper appliances for the ready and prompt stopping of the same, and to have the same properly manned, and to approach said crossing with proper care and caution, and at a prudent rate of speed, and to have their said train under control, so that it might be promptly stopped if it should become necessary.

" And if the jury further believe from the evidence that the said defendant, before attempting to cross said crossing, on the said 26th day of June, 1890, did bring its train to a full stop and send a man ahead to said crossing, and that said man went to the said crossing and looked up the said track of the plaintiff in the direction from which the train of the plaintiff afterwards came, and that the said train of the plaintiff was not then in sight, or was so far distant from said crossing that, if the said plaintiff had then had the proper appliances for stopping its train, and had the same properly manned, the said plaintiff could have then stopped its said train before reaching the said crossing, and that the said plaintiff approached the said crossing with its train at a high and unreasonable rate of speed, without having its train equipped with the proper appliances for stopping the same promptly and easily, and without having it properly manned, and without having it under control, so that it might be promptly and easily stopped, and that if the said plaintiff had been approaching the said crossing at the time aforesaid at a proper rate of speed, with its train properly manned, provided with such proper appliances as aforesaid, and having the same under control as aforesaid, the plaintiff could have avoided said collision by the use of ordinary care and diligence, but that it failed to use such care and diligence, and to stop its said train, and that the said defendant could not, after becoming aware of such negligence and want of proper care on the part of said plaintiff, avert the said collision, then they

must find for the defendant on the second count of the declaration."

## "*E.*"

" The court instructs the jury that there is nothing in the contract in the declaration mentioned requiring the defendant to indemnify the plaintiff against the plaintiff's negligence or omissions; and, if the jury believe from the evidence that the plaintiff, its agents or employees, were guilty of negligence or want of proper care, that such negligence or want of proper care on the part of the plaintiff, its agents or employees, contributed to cause, although they may further believe it was not the entire cause of the collision which occurred on June 26, 1890, and that the defendant could not, after becoming aware of such negligence on the part of the plaintiff, its agents or employees, have averted the said collision, then the jury must find for the defendant on the second count of the declaration."

## "*F.*"

" The court instructs the jury that there is nothing in the contract in the declaration mentioned requiring the defendant to indemnify the plaintiff against the plaintiff's negligence or omissions; and, if the jury believe from the evidence that the plaintiff, its agents or employees, were guilty of negligence or want of proper care, and that such negligence or want of proper care on the part of the plaintiff, its agents or employees, contributed to cause, although they may further believe it was not the entire cause of the collision of June 6, 1890, and that the defendant could not, after becoming aware of such negligence on the part of the plaintiff, its agents or employees, have averted the collision, then the jury must find for the defendant on the first count of the declaration."

*White & Garnett* and *Tunstall & Thom*, for the plaintiff in error.

*Walke & Old* and *J. W. Crisfield*, for the defendant in error.

Keith, P., delivered the opinion of the court.

This is an action of covenant brought in the Corporation Court of the city of Norfolk, by the Suffolk Lumber Company against the Norfolk and Carolina Railroad Company, to recover damages for a breach of a certain covenant entered into between them on the 1st day of August, 1889. It seems that the plaintiff owned and operated a narrow-guage railroad from a point in the State of North Carolina to the city of Norfolk, and the defendant company, desiring to construct a line of railway which was to cross the line of the plaintiff at three points, the agreement sued upon was entered into, which recites that:

" Whereas the Norfolk and Carolina Railroad Company desires, in the construction of its railroad, to cross, at grade, the road of the party of the first part at three points or places ;   *   *   *

" And whereas, as a condition precedent to the enjoyment of the privileges sought to be obtained by the party of the second part, it is essential to the public safety and to the convenience of the said party of the first part, that the constuction and use or employment of the proposed crossing by the party of the second part, in passage of trains or otherwise, should be so regulated and governed as in no manner to endanger the one or impair the other ;

" And whereas justice to the interests of the said party of the first part demands that proper guaranty of indemnity should be given for all losses, injuries, or damages which it may sustain by reason of such crossings, and their employ-

ment by the said party of the second part, which do not result from any negligence or omissions on the part of the agents and employees of the said party of the first part:

" Now, therefore, the Suffolk Lumber Company, in consideration of the premises, does hereby grant to the Norfolk and Carolina Railroad Company, its successors and assigns, the right to cross the road of the Suffolk Lumber Company at the points aforesaid, upon the conditions hereinafter specified, and only so long as the said conditions are complied with by the Norfolk and Carolina Railroad Company, its successors and assigns, the said conditions being as follows:

" That, in order to enable the said party of the second part to exercise successfully the privileges herein granted without imposing any hindrance or delay to the movements of trains of and over the track of the said party of the first part, and without injury or detriment to the same by interference or otherwise with its operations, it shall be the duty of the said party of the second part to provide and erect a suitable signal-post, with proper signals for day and night use, and, at its own proper and exclusive cost, to maintain at all times at said crossings, without exception as to days and hours, a watchman or flagman, whose duty it shall be to give such signals to trains and locomotives approaching said crossings, and carry out such other rules and regulations as the transportation department of said party of the first part shall now or hereafter prescribe for his guidance.

" That, in order to insure the public safety, it shall be the imperative duty of the said party of the second part, or of any party or parties who may operate their road, to cause all of its trains, whether regular or irregular, locomotives and cars, to approach said crossings with caution, and at a rate of speed not exceeding five miles per hour, and to require its conductors, engineers, or other persons having charge of its trains, locomotives, and cars, not to cross the railroad and

track of the said party of the first part, until he has first posi-
tively stopped such train, locomotive, or cars, and not to pro-
ceed to cross until he has been notified by such watchman or
flagman that the track is clear and that he can proceed to
cross, and has satisfied himself beyond a doubt that the signal
on the signal-post has been placed in accordance with the
prescribed rules, so as to permit the passage of the trains of
the said party of the second part.

" In case trains of the party of the first part and the party
of the second part reach the same points of crossings and
connections at the same time, and desire to make use thereof,
the trains of similar class of the party of the first part shall
have the preference over the trains of the party of the second
part (passenger over passenger and freight over freight), pas-
senger trains of either party to have preference over freight
trains of either party.

" That it shall be the duty of the said party of the second
part, and it does hereby agree and undertake, to provide and
erect promptly, at its own proper costs, upon the demand of
the party of the first part, such approved appliances as may
be deemed necessary by the said party of the first part for the
public safety and its better protection.

" That it shall be the duty of the said party of the second
part, and it does hereby fully agree and undertake, upon
demand of the party of the first part, or its successors, to
make good and fully indemnify the party of the first part
against any proper claims for loss, injury, or damage which it
may sustain by accidents, collisions, delay, or hindrances, or
from any other cause arising from or growing out of the acts
or omissions of the agents or employees of the said party of
the second part in the construction, use, or employment of
said crossings.

" In testimony whereof, the parties to these presents have
caused the signature of their respective presidents to be here-

unto subscribed, and their corporate seals to be affixed, and attested by their respective secretaries, the day and year first above written.

SUFFOLK LUMBER COMPANY,

[Seal.]                By W. H. JACKSON, President.

THE NORFOLK AND CAROLINA RAILROAD COMPANY,

[Seal.]                By GEO. S. SCOTT, President."

The declaration contains two counts, from the first of which it appears that on the 6th day of June, 1890, a collision occurred between the trains of the plaintiff and the defendant at the crossing at Station 597–17. The plaintiff, after averring in the usual terms that it had done and performed all things on its part and behalf to be done and performed, according to the tenor and effect, true intent, and meaning of said agreement, complains that the defendant hath not complied with, done, and performed any of the conditions of the said agreement contained on its part and behalf to be complied with, done, and performed, according to the tenor and effect, true intent, and meaning thereof, and then states specifically that the defendant had not erected at the said point of crossing a suitable signal-post, with proper signals for day and night use, and did not maintain the watchman or flagman to give signals, as required by the seventh section of the covenant as above set out, and did not, in fact, give any signals at the said station on the day of the accident, and that the defendant did not approach the crossing at the station named, on the 6th day of June, 1890, with caution, and at a rate of speed not exceeding five miles per hour, and did not require its conductor, engineer, or other person having charge of its train on the 6th day of June, 1890, not to cross the track of the party of the first part until it had positively stopped said train, and did not wait to be notified by the watchman or flagman that the track was clear, and that the

signals had been placed in accordance with the prescribed rules ; but that, wholly disregarding its duty under its covenant, the defendant wrongfully, on the day aforesaid, proceeded to cross the said crossing with its train, by reason whereof a collision occurred between the train of the plaintiff and that of the defendant, whereby the plaintiff sustained great loss and damage to its property, and has been subjected to great outlay in replacing and repairing the same.

The second count is to the same effect, and avers that an accident of a similar character occurred at the same point on the 26th day of June, 1890, and to recover damages for these two injuries, caused by the failure of the defendant company to perform its covenant, the plaintiff brings this suit.

The defendant appeared and demurred to the declaration and to each count thereof.   The court overruled the demurrer.   We do not consider the objection taken to the declaration sufficient, and this assignment of error is overruled.

The defendant filed a number of pleas, the first of which is a plea of conditions performed.   Upon the motion of the plaintiff, this plea was rejected, and in this, too, we think there was no error on the part of the Corporation Court.

" The general rule as to the mode of pleading the performance of conditions of covenants is that the party must not plead generally that he performed a covenant or condition, but must show specially the time, place, and manner of performance, and even though the subject to be performed should consist of several different acts, yet he must show the performance of each." 4 Minor's Inst., Pt. II., p. 1202 (3d ed., 1893).   This rule is said to admit of relaxation in certain classes of cases, as, for instance, where the subject comprehends a great multiplicity of particulars, as in the case of a sheriff's bond for the performance of all of his multifarious duties.   The case under consideration, however, falls rather within the rule than within any of the exceptions thereto, and we are therefore

of opinion that the action of the Corporation Court as to this plea was correct.

The same observations apply to the ruling of the court upon the defendant's sixth plea, which is the plea of *non damnificatus.* 4 Minor's Inst., Part II., p. 1203 (3d ed.).

The second and third pleas offered by the defendant to the first count of the plaintiff's declaration are substantially the same. They deny the plaintiff's right to recover, because the collision complained of " did not happen by reason of any breach, or alleged breach, of the covenants, conditions, or agreements, or of any or either of them, in the said first count of the declaration mentioned, but the proximate cause thereof was the negligence and want of ordinary care of the plaintiff in approaching with its train the point of collision, at the time mentioned and alleged as the time of said collision in the first count of the declaration." And the pleas further aver " that after the plaintiff knew of the acts and omissions complained of in said count as constituting the negligence and improper conduct of the defendant, the plaintiff might and could have avoided the collision by stopping its train as aforesaid, approaching the point of collision, and before reaching said point, and could have stopped the same by use of ordinary care and diligence, but it utterly failed to use such ordinary care and diligence, and to stop its train, whereby said collision occurred ; and the defendant says that, if it had not been for such negligence and want of ordinary care on the part of the plaintiff, the collision would not have occurred, and that the said defendant could not, after becoming aware of the said negligence and want of proper care on the part of the plaintiff, avoid the consequences and avert the collision."

The fourth plea avers that after the agreement of the 1st of August, 1889, had been entered into between the parties, the defendant had been, with the knowledge and acquiescence

and without objection on the part of the plaintiff, habitually operating its road over the said crossing, without the provision and erection of any signal-post thereat, and without any watchman or flagman at said crossing, and without stopping its train before proceeding to cross, and that the provisions and requirements of the said agreement, to be done and performed on the part of the said defendant, were entirely ignored and dispensed with by the said plaintiff, all of which the plaintiff knew at and before the time of said collision, and that therefore it was the duty of the plaintiff, in approaching the said crossing with its trains, to have the same provided with proper appliances for the ready and prompt stopping of the same, and to have the same properly manned, and to approach the crossing with proper care and caution, so as to have the train under control, that it might be promptly stopped if it should become necessary. The defendant then avers that the plaintiff utterly failed to have its train properly equipped so that it might be easily controlled, whereby it could have avoided said collision, but that it utterly failed to use proper care and diligence, and to stop its train, from which the collision occurred; and the defendant further says that, if it had not been for such negligence and want of ordinary care on the part of the plaintiff, the collision would not have occurred, and that the defendant could not, after becoming aware of the said negligence and want of proper care on the part of the said plaintiff, avoid the consequences thereof and avert the collision.

The fifth plea differs from the fourth in omitting the averment that the defendant had been, with the knowledge and acquiescence and without objection on the part of the plaintiff, habitually operating its road over the crossing at the said station, and that the provisions and requirements of the agreement between the parties, to be done and performed on the part of the defendant, were entirely ignored and dispensed

Opinion.

with by the plaintiff; but does aver that when the defendant's train approached the crossing on the 6th day of June, 1890, it gave due notice of its approach by whistling, which was heard by the conductor and engineer of the plaintiff's train; and then avers that the accident was caused by the negligence of the plaintiff, who, with full knowledge of the existing situation, attempted to cross without proper appliances for controlling its train, and that the accident was wholly due to the negligence and want of ordinary care on the part of the plaintiff, and could not have been avoided by the exercise of ordinary care and diligence on the part of the defendant.

The plaintiff moved the court to reject the pleas offered by the defendant, and, as we have seen, the court properly rejected the pleas numbered 1 and 6. It permitted Plea No. 4 to be filed, and its ruling rejecting Pleas Nos. 2, 3, and 5 are the subject of the plaintiff in error's second assignment of error.

The defendant tendered Pleas Nos. 7, 8, 9, 10, and 11, to all of which the plaintiff objected, but the court overruled the objections to the pleas numbered 7, 8, 9, and 10, and sustained the objection to Plea No. 11, and this action of the court constitutes the third assignment of error.

The eighth and ninth assignments of error are based upon the ruling of the court with respect to the instructions asked on behalf of the plaintiff and defendant.

The tenth assignment of error is to the refusal of the court to set aside the verdict and give the defendant a new trial upon the grounds set out in the plaintiff's Bill of Exception No. 17.

All of these assignments of error can be treated together. We are of opinion that the plaintiff in error cannot be considered as a trespasser. We cannot understand how the defendant in error can sue in an action of covenant, setting out the contract between itself and the plaintiff in error, and

at the same time undertake to hold it liable as a wrong-doer. When it brought suit to recover damages for the injury sustained, it might have sued in trespass on the case, and if the plaintiff in error had sought to set up the agreement of August 1, 1889, in order to establish contract relations with the defendant in error, there might have been room for the contention that the contract had not been complied with upon the part of the plaintiff in error, and that a performance of it on its part constituted a condition precedent to the acquisition of any rights under it; but here the defendant in error occupies, or rather attempts to occupy, a most anomalous position. It sues in covenant upon a contract under seal, and yet seeks to impose upon the defendant a liability upon terms wholly unknown in the enforcement of contracts. The covenant between the parties gave to the plaintiff in error the right to cross the track of the defendant in error upon certain terms and conditions, that is, after it had done certain things specifically set out in the contract. The failure to do those things constitutes a cause of action against the plaintiff in error, but does not constitute it a trespasser. But for that contract, the plaintiff in error would have been either a licensee or trespasser—a licensee if it crossed the road of the defendant in error by its assent, expressed, or implied from its acquiescence; a trespasser if it undertook to use the property of the defendant in error without its assent, expressed, or implied from its acquiescence. In the absence of the contract, the question would have been, in case of injury, what constituted negligence on the part of the plaintiff in error, and what degree of duty, if any, the defendant in error owed to it. By the contract the parties have themselves stipulated what the duty of the Norfolk and Carolina Railroad Company should be, what things it was to do, and what things it was to omit to do, and, if loss occurred by reason of any acts of omission or commission embraced within its cove-

nant, its liability to make good that loss to the Suffolk Lumber Company was fixed by the covenant. To this covenant, therefore, we must look in order to ascertain the respective duties and liabilities of the parties to it.

It will be observed that it is expressly stipulated in the covenant "that justice to the interests of the party of the first part demands that proper guaranty of indemnity should be given for all losses, injuries, or damages which it may sustain by reason of such crossings, and their employment by the said party of the second part, which do not result from any negligence upon the part of the agents and employees of the said party of the first part."

In the tenth clause the plaintiff in error binds itself to " fully indemnify the party of the first part against any proper claims for loss, injury, or damage, which it may sustain by accidents, collisions, delays, or hindrances, or any other cause arising from or growing out of the acts or omissions of the agents or employees of the said party of the second part, in the construction, use, or employment of said crossings."

The construction of this language seems to be free from difficulty. By it the plaintiff in error covenanted to be responsible for all losses sustained by the defendant in error which were the ordinary and probable consequences of its omission to comply with the terms of its covenant. In other words, it is responsible for all injuries sustained where its acts of omission or commission, which it stipulated in its covenant to perform or refrain from, were the proximate cause of the injury inflicted. But where the conduct of the plaintiff in error was not the proximate, but only the remote cause or condition of the accident, and where the acts of the defendant in error, or its omissions of ordinary care, constituted the immediate or proximate cause of the injury which it sustained, then the wrong was self inflicted, and it cannot recover.

To hold that the defendant in error was only responsible for gross negligence, or wilful negligence, would be a proposition only tenable if the plaintiff in error is to be treated as a mere trespasser, and then only in the event that its attitude or position as a trespasser was not discovered in time to enable the defendant in error to avoid the consequences of the trespasser's misconduct in time, by ordinary care, to avert its consequences.

For these reasons we think that there was no error in the judgment of the Corporation Court in refusing to strike out Plea No. 4, but that there was error in striking out Pleas Nos. 2, 3, and 5, and also in striking out the defendant's Plea No. 11 to the first count of the plaintiff's declaration.

It follows also from what has been said that Instructions Nos. 2, 3, and 4, offered by the defendant in error, should have been rejected.

We see no error in Instructions Nos. 5, 6, and 7, as given by the court.

Another ground of error alleged is to the admission by the court of a letter from W. H. Jackson, president of the Suffolk Lumber Company, enclosing an itemized bill of expenses incurred on account of the two wrecks. The letter is unsigned, and merely sets forth the various items of damage and loss alleged to have been sustained by the defendant in error. We do not see that the admission of this letter could by possibility have injured the plaintiff in error. This objection is therefore overruled.

Objection was taken to a statement made by Frank G. Whaley, who was asked by the defendant in error, " Please state if you had any conversation with Mr. Hart, conductor on the Norfolk and Carolina train, after that accident, and when, and where, and what occurred ? " It appears that the conversation or statement sought to be elicited by this question took place an hour after the accident happened ; that it

constituted no part of the *res gestæ;* that it could not be considered as an admission made by an agent of the plaintiff in error, and we think that it was properly excluded.

Exception was taken to the ruling of the court in permitting the following question to be asked : "Mr. Cannon, if there had been any signal-post with signals and a watchman, as the contract requires, and as is now there, could there have been any accident on that occasion ?" To this the witness replied, "I think not." The plaintiff in error excepted to the ruling of the court in allowing this question to be asked, upon the ground that it called for an expression of a mere opinion upon the part of the witness. We think the objection well taken, and that it should have been sustained.

Objection was also made to the action of the court in permitting the defendant in error to ask a witness, one John R. Gillis, the following question : "State whether or not, after that accident occurred, you walked over that crossing with Mr. Wrightson, a conductor of the Norfolk and Carolina railroad, and, if so, state what conversation occurred between you on that occasion in regard to this matter"; to which question the defendant by counsel objected, and asked the witness how long after the accident occurred before that conversation took place, to which witness replied : "I judge probably twenty minutes or half an hour—something like that; I cannot state positively what time it was, but the accident was entirely over, and we were walking up to the station." The court overruled the objection, witness answered, and the answer is material. We think, however, that both question and answer should have been excluded, for the reasons already given with respect to the questions propounded to Frank G. Whaley. See *Va. & Tenn. R. R.* v. *Sayers,* 26 Gratt. 328; *Vicksburg & Meridian R. R. Co.* v. *O'Brien,* 119 U. S. 99; *Jammison* v. *C. & O. Ry. Co.,* decided at the present term, *ante* p. 327; and *Gray* v. *Commonwealth, post,* and 22 S. E. Rep.

Opinion.

For these reasons we think the judgment of the Corporation Court is, in the several particulars mentioned, erroneous; that it should be reversed, the verdict set aside, and a new trial had in accordance with the views expressed in this opinion.

*Reversed.*