# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## BLUE RIDGE LIGHT AND POWER CO. v. PRICE.

### November 19, 1908.

1. EVIDENCE—*Res Gestae—Declaration of Servant After Accident—Street Railways.*—The statements of a motorman of an electric car to a third person, made immediately after an accident by which a passenger was injured in consequence of prematurely starting the car, as to why he started the car, are not admissible in evidence in an action by the passenger against the street car company to recover for the injury. Such statements are no part of the *res gestae*, nor, in making them, was the motorman performing any duty within the sphere of his employment. As a general rule, railway companies are not responsible for the declaration or admissions of any of their servants beyond the immediate sphere of their agency, and during the transaction of the business in which they are engaged.

2. APPEAL AND ERROR—*Evidence—Improper Reception—Effect on Verdict —Street Railways.*—Where it is material to determine whether a car was moving or standing still at the time of an accident, and the evidence is conflicting, if illegal evidence has been received on that point the verdict of the jury will be set aside, as this court cannot determine how far the evidence improperly admitted may have affected the minds of the jury in arriving at their verdict.

3. EVIDENCE—*Opinions of Non-Experts—Apparent Extent of Injury.*—All witnesses who have had suitable opportunity to observe may give their opinions for what they are worth as to whether or not a person injured by an accident appeared to be seriously or permanently disabled.

4. INSTRUCTIONS—*Assuming Disputed Facts—Street Railway—Case at Bar.*—In an action against a street car company to recover for a negligent injury inflicted on an alleged passenger, where the jury have been fully instructed as to what constitutes a passenger, an instruction which tells the jury that the defendant "was bound to use the utmost care and diligence for the safety of its passengers, and is liable for injuries to its passengers occasioned by the slightest neglect against which human prudence and foresight might

have guarded," is not amenable to the objection that it assumes that the plaintiff was a passenger.

5. INSTRUCTIONS—*Evidence to Support—Street Railways—Case at Bar.*—Where there is evidence tending to prove that one of defendant's street cars had stopped for the purpose of receiving passengers, that the plaintiff wished to get on it, that the conductor of the car knew this and was assisting her in her efforts to do so, and that she was thrown to the ground and injured because the car was started suddenly, without warning to her, it is not error to instruct the jury that, if they believe these facts to be established, they should find for the plaintiff.

Error to a judgment of the Circuit Court of Augusta county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*J. M. Perry,* for the plaintiff in error.

*Charles* and *Duncan Curry,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action to recover damages for personal injuries alleged to have been caused by the negligence of the plaintiff in error in moving its car whilst the defendant in error was attempting to board it as a passenger.

The first error assigned is to the action of the court in permitting one of the plaintiff's witnesses to testify to a conversation he had with the defendant's motorman in reference to the accident.

One of the material questions in the case was whether the car was standing still or moving when the plaintiff attempted to get on it. The witness, who was some twenty feet from the point where the plaintiff was injured had testified that the car was not moving when the plaintiff put her foot on the step, but before she could get on, the car pulled out and she fell. He was

then asked: "Right there at the time Miss Price was hurt, did you say anything to the conductor?

"Answer: Yes, I remarked to some one else—

"Question: Did you say anything to the conductor about his moving up?

"Answer: I don't know whether it was the conductor or motorman, one of them.

"Question: What did you say to them?"

And to this question and to any answer thereto the defendant, by its counsel, objected, on the grounds that the evidence sought to be so introduced was irelevant and immaterial; that the said statements, if any, were matters between strangers to the defendant and not binding upon it, its employees named not being authorized to make the same; and that such statements, if any, were not a part of the *res gestae*. And thereupon the defendant, by its counsel, interrogated the witness as follows, with the following replies by him thereto:

"Question: Had you picked Miss Price up at the time you made this statement?

"Answer: I didn't pick her up at all.

"Question: Had Miss Price gotten up at the time the statement was made?

"Answer: Yes, sir.

"Question: Had she gotten up into the car?

"Answer: Yes, sir. I went to the window and asked Miss Price if she was hurt—"

And thereupon the court overruled the said objection of the defendant to the said question propounded for the plaintiff and to any answer thereto and permitted the said witness to answer the said question. And answering the said witness replied:

"The motorman made a remark that he had no right to stop on the railroad track, and I remarked to him, 'what did you stop for, then?' "

What took place between the witness and the motorman was no part of the *res gestae*. Neither in what he said nor in fail-

ing to reply to what was said to him was the motorman performing any duty within the sphere of his employment or agency.

The general rule is, that railway companies are not responsible for the declarations or admissions of any of their servants beyond the immediate sphere of their agency, and during the transaction of the business in which they are employed. It has been held that the declarations of the conductor or engineer of a railroad train, as to the manner in which an accident occurred, made after its occurrence, are not admissible.

In *Lucy* v. *Hudson River, &c. R. Co.,* 17 N. Y. 131, it was held, that the declarations of the driver of a car, that the reason why he did not stop it and thus prevent the injury done the plaintiff was because the brakes were out of order, made after the injury was inflicted and the transaction terminated, was inadmissible against the company, being mere heresay. . See *Va. & Tenn. R. Co.* v. *Sayers,* 26 Gratt. 328, 330-2; and authorities cited: *Jamison* v. *C. & O. Ry. Co.,* 92 Va. 327, 23 S. E. 758, 53 Am. St. Rep. 813; *N. & C. R. Co.* v. *Suffolk, &c. Co.,* 92 Va. 413, 443-4, 23 S. E. 737; 1 Greenleaf on Ev., (Redfield's ed.), sec. 114-a; 1 Elliott on Ev., sec. 255; 2 Wigmore on Ev., sec. 1078.

Neither upon principle nor under the authorities was the evidence in question admissible.

It is argued, however, that even if this evidence was not admissible, its admission could not have affected the verdict of the jury. The evidence as to whether or not the car was moving or standing still when the plaintiff attempted to board it is very conflicting. More witnesses testified that it was moving at that time than testified that it was standing still. How much the evidence improperly admitted may have affected the minds of the jury in reaching their verdict it is impossible for this court to estimate, and it would (as was said in *Va. & Tenn. R. Co.* v. *Sayers, supra,* where similar evidence had been improperly admitted and a like argument made, that it could not have

changed the verdict) be going beyond our legitimate function to enter upon any such speculation.

Two of the plaintiff's witnesses, who were with her frequently after her alleged injury and in a situation to know and speak of her condition as far as lay witnesses could speak, were permitted to testify over the defendant's objection as follows, in substance: One of them stated that the plaintiff did not appear to have such use of her shoulder as enabled her to carry on her work (that of a seamstress), and the other that since the accident the plaintiff had not been able to do anything with her arm, follow her occupation, or make her living; and that this condition was on account of her arm. This evidence, it is argued, was mere matter of opinion—the conclusion of the witnesses—and since they were not experts it was inadmissible.

In section 440-a, 1 Greenleaf on Ev. (Redfield's ed.), it is said, in reference to giving testimony by way of opinion, that "All witnesses are competent to form a reliable opinion, whether one whom they have the opportunity to observe appears to be sick or well at the time; or whether one is seriously disabled by a wound or a blow. But if the inquiry were more definite as to the particular state of disease under which one is laboring, or its curable or fatal character; or as to the dangerous or fatal character of a wound or a blow; or in what particular mode or with what species of weapon or instrument such blow or wound was inflicted, special study, observation and experience might be requisite in order to express an opinion entitled to the dignity of being regarded as evidence."

The rule as laid down by Elliott on Evidence is substantially the same. Sec. 679.

Under that rule, which seems to be a reasonable one, the evidence objected to in this case was properly allowed to go to the jury for what it was worth.

The action of the court in giving at the request of the plaintiff the following instruction is assigned as error:

"The court instructs the jury, that if they believe from the evidence in this case that the defendant company, at the time

of the occurrence of the alleged injury in the declaration mentioned, was engaged in running and operating street cars in the city of Staunton for the purpose of carrying passengers, that then it was bound to use the utmost care and diligence for the safety of its passengers, and is liable for injuries to its passengers occasioned by the slightest neglect against which human prudence and foresight might have guarded."

Two objections are made to the instruction—one that it assumes that the plaintiff was a passenger of the defendant, and the other that it calls attention to a part of the evidence only and omits other evidence relevant to the question of negligence and contributory negligence.

The object of the instruction was to tell the jury what degree of care the defendant company owed to passengers. It does not assume that the plaintiff was a passenger. Whether she was or not was submitted to the jury by other instructions. Neither does it call the jury's attention to any part of the evidence upon the question of the negligence of the defendant or the contributory negligence of the plaintiff. Those questions were fully dealt with by other instructions.

The court gave five instructions upon motion of the plaintiff, and nine at the instance of the defendant, in which every phase of the alleged negligence of the defendant and the alleged contributory negligence of the plaintiff, which the evidence tended in any way to sustain, was dealt with.

The giving of the plaintiff's instruction numbered 4 is assigned as error. That instruction is as follows:

"The court instructs the jury, that if they believe from the evidence in this case that the defendant through its servants and agents stopped a certain one of its cars near the Baltimore & Ohio depot for the purpose of inviting and receiving passengers on board its cars, and that while said car was standing for that purpose, the plaintiff attempted to get on board of said car as a passenger, and while the car was standing still, and when she had taken hold of the railing of the platform and was attempting to get on the car, and before she had time to get on,

the car was suddenly and without any warning to her, negligently started and the plaintiff was thrown, knocked and jerked down on the street and injured, then the jury ought to find a verdict for the plaintiff, if they believe from the evidence that the said negligent starting of said car was the proximate cause of the plaintiff's injury."

The objections made to this instruction are, (1st) that there was no evidence that the car was stopped at the point mentioned for the purpose of inviting and receiving passengers on board the car; (2nd) that while it undertakes to detail the facts hypothetically it omits the evidence of witnesses who stated that the plaintiff was warned not to attempt to board the car at the time she was injured; and (3rd) that the instruction omits a most material element of the commencement of the relation of carrier and passenger, namely, acceptance of the passenger by the carrier.

We do not think that either of these objections is good. The plaintiff testified that when she determined to take the car it was standing still, but before she reached it, it pulled out; that it stopped again when she started towards it and the conductor came along and took her telescope, walked up in the car, she being immediately behind him; that she took hold of the rod and got about half her weight on the step when the car started off rapidly, causing her to fall and receive the injuries complained of.

This evidence manifestly tended to prove that the car had stopped for the purpose of receiving passengers; that the plaintiff wished to get on it; and that the conductor knew this and was aiding her in her effort to do so. There was also evidence tending to show that the car was suddenly, and without warning to the plaintiff, started, and that she fell or was thrown therefrom and received the injuries complained of. This was the case which her evidence tended to make, and if the facts hypothetically stated in the instruction were established, there can be no question that she was entitled to recover. It would

be a somewhat startling proposition to hold that a person attempting to get on a street car under the circumstances set out in that instruction was not entitled to that high degree of care which companies operating such cars owe to passengers.

We see no error in the instruction.

The defendant's theory of the case, that the car had not stopped for passengers; that plaintiff had been warned not to attempt to get on at the place where she was injured; that the car was moving at that time; and that she had not become a passenger when injured, was fully submitted to the jury by defendant's instructions numbered 4, 5 and 9.

The remaining assignment of error is to the refusal of the court to set aside the verdict as contrary to the evidence. As the case will have to be reversed for the improper admission of evidence, as hereinbefore stated, and the cause remanded for a new trial, upon which the evidence may not be the same, nothing would be gained by passing upon this assignment of error.

The judgment complained of will be reversed, the verdict of the jury set aside, and the cause remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed.*