# CHARLESTON.

GRAFTON & G. R. CO. *v.* DAVISSON.

(DENT, JUDGE, *absent.*)

Submitted Febuary 2, 1898—Decided April 16, 1898.

1. JUDGMENT—*Equitable Relief—Justice of the Peace—Certiorari.*

   Where a case is tried before a justice, and a .bill of exceptions essential to enable a party to obtain a writ of *certiorari* is lost, if signed, or if not signed, the justice sickened and died without signing it, and there appears probable ground for a writ of *certiorari*, it is a proper case for equity relief against the judgment, and for retrial.   (p. 14.)

2. NEW TRIAL—*Injunction—Issue out of Chancery—Equity Practice.*

   Upon a bill in chancery to enjoin a judgment at law, and for a retrial, there must not be a decree before such retrial annulling the judgment and granting a new trial in the law court; but the judgment is allowed to stand as security for what may be found to be justly due, and the injunction allowed to stand until after the retrial, and the decree should direct an issue or issues to be tried in the circuit court to find what the nature of the case requires, and upon the verdict the court should perpetuate or dissolve, wholly or partially, the judgment.   (p. 16.)

3. JUDGMENT—*Injunction—Reversal—Lien.*

   Where an injunction to a judgment is only perpetuated as to part of it, or a reversal is only as to part of a judgment, the lien of the part not affected continues from the date of the judgment.   (p. 17.)

4. RAILROADS—*Right of Way—Fences.*

   A railroad company is not bound to fence its line from adjoining improved land except where it has condemned land for its use.   (p. 15.)

5.  Agency.
    An agent must be proven to have power to do the act in question.  (p. 15.)

Appeal from Circuit Court, Taylor County.

Bill by the Grafton & Greenbrier Railroad Company against Reuben Davisson for an injunction and equitable relief.  From a decree for defendant, plaintiff appeals.

*Reversed.*

W. R. D. Dent, for appellant.

W. T. Ice and L. M. La Follette, for appellee.

Brannon, President:

Davisson sued the Grafton & Greenbrier Railroad Company before a justice to recover pay for a fence built by Davisson along the line dividing land owned by him and another and land of said company on which its track had been constructed; and upon the trial before a jury the company moved the justice to strike out the plaintiff's evidence, because it showed no liability upon the company, but the justice refused to do so, and rendered judgment on the verdict against the company.  The justice's docket states that a bill of exceptions was signed; but Davisson says that the justice informed him that it had not been signed.  The company applied to the justice for a copy of the record in order to carry the case to the circuit court by *certiorari;* but the justice had in the meantime sickened, and shortly died, without furnishing a copy of the bill of exceptions, and his successor could not find any such bill, and, as the case depended on the showing of the bill of exceptions, the company's recourse to a *certiorari* is blocked.  An execution upon the judgment was levied upon a locomotive of the company, and it brought this suit in equity to enjoin the execution and for relief against the judgment; and, the circuit court of Taylor having dismissed the bill, the company appeals.

As the loss of the bill of exceptions, if it was signed, prevents the company from exercising a clear right accorded to it by law,—that of applying for redress to a higher court,—it is manifest that there must be some re-

dressive procedure furnished by law against the accident of loss; or, if the bill was not signed, the case is not changed, as the law must furnish some redress against the loss falling upon the defendant from the dispensation of Providence in the death of the justice who alone could sign the document. In either case the jurisdiction of equity is warranted under the well-known head of equity jurisdiction called "Accident." Equity gives relief under that head, and this case is one of accident. It is undeniably true that, where a court of law has tried a case, any error therein must be corrected by an appellate process, or not at all, as equity does not assume to revise and reverse the action of the law court in those things which it passed upon, and will not do so on matters not before the court, and which could have been operative if presented, but which were not presented, by reason of negligence; but equity will enjoin judgments at law where there is reason to do so because of fraud, accident, surprise, or some adventitious circumstances beyond the control of the party. *Braiden* v. *Rietzenberger*, 18 W. Va., 286; *Slack* v. *Wood*, 9 Grat., 43. A fine statement of the doctrine touching equity jurisdiction to give relief against judgments will be found in 2 Tuck. Comm. 475, and *Oliver* v. *Pray*, 19 Am. Dec., 603. Those authorities admit that when the case is one of accident, beyond the party's control, equity interferes. The present case is as clearly one of accident as *Lee* v. *Foushee*, cited in *Terrel* v. *Dick*, 1 Call, 553, where a verdict was found late in the evening, and a motion for a new trial was prevented by the change of the members of the court next morning. And I just notice that in *Knifong* v. *Hendricks*, the fact that the justices who tried the case had left the bench, preventing a motion for a new trial, was held ground for equity's intervention to give a new trial. 2 Grat., 212. It is stronger than the case of *Oliver* v. *Pray*, 19 Am. Dec., 595, where a clerk took an insufficient appeal bond and the Ohio supreme court dismissed an appeal, and then equity granted a new trial. These and other authorities show that equity is the only remedy of defendant. The justice could not make another bill of exceptions, because too sick; and, as the case had ended with him, he could not be compelled to do so

except by a *mandamus*, and he was sick.  It does not appear that the record can be supplied by evidence, if the statute allowing restoration of lost records applies to justice's courts.  At any rate, the appellant had done all it was required to do, had presented a bill of exceptions approved by the justice, and no process, after his death, could supply it; and further, at any rate, we have the accident before us as a fact, and equity is the readiest relief for its cure.

The next question occurring to my mind is whether we should say that the accident barring the company from a *certiorari* is alone cause for equity relief, or must we see that there was good ground for a *certiorari*.  As the law gave absolute right to the company to apply for a *certiorari*, and this accident prevented the application, does that alone call for equity relief?  If we go further, it would seem to make equity a court of review; and yet ought it interfere where no shadow of ground for charge of error is shown?  Ought equity do a clearly vain thing?  As the appeal is to equity, I think it must be shown to it that there is probable cause for saying the party had a case of error, as held in *Oliver* v. *Pray*, *supra*.  Looking then, to see whether there is any ground on which to base the allegation that error was committed to the prejudice of the company by the jury and justice, I think that, on the showing made by the record of this cause, there is such ground.  Davisson and his co-owner acquired the land after the railroad was running.  It does not appear that the land had been condemned by legal process for the railroad, as it is only where there is legal condemnation that a railroad is required to fence improved land.  A contract or understanding of indefinite character between Davisson and Hall, an agent of the company, of power not defined by the record, by which Davisson was to build the fence and be compensated, is relied upon; but that agent must be shown to have power to so contract, and he could make no contract to bind the company to build the fence, if the land had not been condemned.  He could not, by express contract, bind the company to do what the law did not require it to do.

Next comes the question, what relief shall we give?  We cannot set aside verdict and judgment, and, treating the

case as then one still pending in the justice's court, direct it to be remanded to that court for a new trial, though that would seem to be the sensible course. That would be direct action over the law court. Our decisions forbid this. The theory is that the case is perfectly ended in the justice's court, and, therefore, there can be no new trial there. But I think the theory had its birth in the struggle of courts of law as far back as the reign of Edward IV. against the jurisdiction exercised by chancery courts to control action at law by injunction, which was branded by the defenders of the common-law courts as simply usurpation of a power to virtually reverse and control the proceedings of courts of law. That struggle ended in the triumph of chancery. It became settled that, while courts of chancery could not merely review actual action of a court of law by review and reversal, it could and ought to exercise jurisdiction, in some mode, to relieve against a judgment which, in equity and justice, ought not to be enforced, because of some fact not before the court of law when judgment was rendered, which diligence could not have presented to it, and which after judgment would not —could not—be heard in the law court to affect the judgment. If the chancery court would set aside the verdict and grant a new trial in the same action, the law court would not recognize the order, as it would regard this a direct impingement upon its jurisdiction, and make the chancery court its superior. Hence chancery does not set aside the verdict, and order the law court to grant a new trial, and remand, as does an appellate court when the very case itself is translated into it by appellate procedure; but, having the parties before it in an independent cause, it directs an issue or issues to be tried at its bar, and, upon the result of the trial, perpetuates or dissolves, in whole or in part, the injunction to the judgment, but lets the injunction in the meantime stand. The court must not at once set aside the judgment, and grant a new trial, when it determines that a retrial should be had, but must await its result, as the judgment ought to stand as security until it is finally determined whether it shall be perpetually enjoined or not. *Knifong* v. *Hendricks*, 2 Grat., 212; *Bank* v. *Hupp*, 10 Grat., 33; *Wynne* v. *Newman*, 75

Va., 811; Bart. Ch. Prac. 58; 2 Story, Eq. Jur. § 1574. The judgment ought to be allowed to stand as security, until the final decree, as its lien is good for what may be found to be really due, though obtained by fraud, accident, or surprise, and though what may be due be the whole or only part of the debt recovered (*Bank* v. *Vanmeter*, 4 Rand., 553, Judge Green's opinion. Judge Lee's opinion, *Bank* v. *Hupp*, 10 Grat., 33); just as a judgment reversed in part is all the while a lien (2 Bart. Ch. Prac. § 295; *Moss* v. *Moorman*, 24 Grat., 97). There are cases where at once the judgment was set aside and a new trial granted; but it is improper, as cases above show.

The decree is reversed, the injunction reinstated, and an issue is directed to be tried by a jury in the circuit court to find what amount, if any, Davisson is entitled to recover of said Grafton & Greenbrier Railroad Company for building the fence, and, upon a verdict thereon, to perpetuate or dissolve, in whole or in part, the said injunction as to said judgment, and for such purposes, and others proper under equity practice in such cases, the cause is remanded. I also think it was error not to continue the case to allow Hall's deposition to be taken.

*Reversed.*