# CHARLESTON.

GRAHAM v. CITIZENS' NAT. BANK OF PARKERSBURG.

Submitted Sept. 17, 1898—Decided Dec. 17, 1898.

45  701
50  530
45  701
56  190

45  701
58   20
58  240

1. EQUITY—*Inj unction—Judgment—New Trial.*
   Chancery will not enjoin a judgment at law and grant a new trial merely for error in the law court, but only because of fraud, accident, surprise, or some adventitious circumstance unknown to the party before judgment, and beyond his control. (p. 703).

2. EQUITY—*New Trial—Judgment—Appellate Court.*
   If a party know, or by ordinary diligence could have known, before a final judgment in a law court, a fact, he must make it the ground of a motion for new trial, and, if refused, go to an appellate court, as equity will not grant him a new trial for it. (p. 706).

3. EQUITY—*New Trial—Change of Venue—Writ of Error.*
   Equity will not grant a new trial because of prejudice in the community. That must be made available by application for a change of venue and writ of error. (p. 705).

4. EQUITY—*New Trial.*
   A new trial in equity cannot be had on merely asking. Particular grounds pointed out by equity law must exist, and they must be clearly proven. (p. 705)·

5. VERDICT—*Jurors.*
   Jurors will not be heard to impeach their verdict, except in few instances. They are heard more readily to sustain their verdict. (p. 703).

6. DEPOSITIONS—*Jury—Leave of Court.*
   Depositions read in a trial at law by a jury cannot be carried out by the jury, to be considered when deliberating on the case, except by leave of court. Code c. 131, s. 12    (p. 704).

7. JUDGMENT—*Injunction—Jurisdiction—Judge.*
   In case the judge of a circuit is interested, a circuit court of a

county of an adjoining circuit has jurisdiction to enjoin a judgment rendered in a court of his circuit. (p. 707).

8. EQUITY—*New Trial—Injunction—Judgment.*

Chancery cannot reverse or set aside a judgment of a law court for error or other cause, and order the law court to grant a new trial, but it can act on the person of the owner of the judgment by injunction against the enforcement of the judgment, and direct a trial by jury, and, upon verdict, either perpetuate or dissolve, in whole or in part, the injunction. (p. 708).

9. JUDGMENT—*Injunction—Injunction Bond—Costs.*

Where there is an injunction to a judgment against two or more persons, and only one signs the injunction bond or applies for the injunction, upon dissolution there should not be award of execution for damages at ten per cent. on principal, interest, and costs from the date till dissolution of the injunction against all the judgment debtors, but only against those signing the bond or asking the injunction; nor should costs in the injunction case be given against those not going in bond or injunction. (p. 708).

10. HARMLESS ERROR—*Costs.*

Where there is no other error, this Court will not reverse for error as to costs. (p. 708).

Appeal from Circuit Court, Jackson County.

Bill by R. B. Graham against the Citizens' National Bank of Parkersburg. From a decree dismissing the bill plaintiff appeals.

*Affirmed.*

WILLIAM A. PARSONS and V. S. ARMSTRONG, for appellant.

V. B. ARCHER and WILLIAM BEARD, for appellees.

BRANNON, PRESIDENT:

The Citizens' National Bank of Parkersburg brought two actions at law in the circuit court of Wirt County,—one against R. B. Graham and D. H. Bumgarner, and the other against R. B. Graham and M. M. Dent,—which were tried by jury, and in which the verdicts were for the bank, and judgments given for it. Graham then brought a chancery suit in Jackson County to obtain a new trial, and, it resulting in a dismissal of his bill, Graham appealed to this Court.

The printed record is three hundred and eighty-five pages, and the briefs copious; yet I think the matter to be considered, very limited, and dependent on well-settled

principles.  The bill of twenty printed pages sets up very many matters as grouuds for new trial, and impeaches the court and jury which tried the cases, and the community where the cases were tried, for prejudice against Graham, all of which substantially fail for want of proof; most of them immaterial, even if true.  After a trial at law, application to equity for a new trial stands on very restricted ground.  Courts of equity have no disposition to prolong litigation after fair trial at law.  It will do so only where the reason for it is based on fraud, accident, surprise, or some adventitious circumstance beyond control of the party.  *Braden* v. *Reitzenberger*, 18 W. Va. 286; *Sayre's Adm'r* v. *Harpold*, 33 W. Va. 557, (11 S. E. 16).

From the many grounds presented by the bill for new trial, all are eliminated, and very properly so, by the last brief of appellant's counsel, but three, viz: (1) That the depositions of Shattuck, Jackson and Flaherty in some way got before the jury in its retirement to consider of its verdict, and were read by the jury; (2) that public prejudice existed in the town of Elizabeth and in Wirt County against Graham at the time of the trial; (3) personal ill-will and prejudice on the part of some jurors.

As to the depositions:  This charge is sustained by the evidence of two jurors.  A long list of Virginia and West Virginia cases, as well as late cases from almost everywhere, hold that the evidence of jurors will not be heard to impeach their verdict.  *State* v. *Cobbs*, 40 W. Va. 724, (22 S. E. 310); *Probst* v. *Braeunlich*, 24 W. Va. 357; *Steptoe* v. *Flood's Adm'r*, 31 Grat. 323; *Reydolds* v. *Tompkins*, 23 W. Va. 229; 4 Minor, Inst. pt. 1, p. 761; 2 Thomp. Trials, s. 2618.  But the effort is to make this case an exception to the confessed general rule, upon the argument that while the evidence of jurors is inadmissible as to their motives in reaching a verdict, or the consideration they gave the evidence of persons or papers, or whether they considered irrelevant or improper evidence, yet they are competent to show collateral or independant circumstances, or facts which, by mistake, accident, or fraud, were before the jury.  I do not think this exception can be sustained.  Look at the reason of the rule.  It is based on a general policy.  In *Bank* v. *Waddill's Adm'r*, 31 Grat. 483, Judge

Moncure says that the rule rests on three grounds: (1) Because the evidence would tend to defeat the solemn acts of the jurors; (2) their admission would open the door to tamper with jurymen after they have given their verdict; (3) because such evidence would be the means, in the hands of a dissatisfied juror, to destroy a verdict at any time after he had assented to it. These reasons apply to this case. While the evidence of jurors cannot impeach their verdict, it is sometimes received to support it, though cautiously. *State* v. *Cartwright*, 20 W. Va. 32, (Syl. point 5.) One juror says the depositions were not before the jury. He was foreman, and would likely know. Another, who, as Graham said, told him they were before the jury, when put under oath, says that he does not recollect that they were. If they were, it is strange he had forgotten it. The only evidence we have to show that the depositions were before the jury is that of Graham, whose evidence throughout shows a deep feeling, a strong prejudice, and very ready and liberal unrestrained statement in his own behalf, on this and other points. How does he know the depositions were before the jury? My construction of his evidence is that he saw a bundle of numerous papers, which were before the jury by consent and leave of court, returned into court when the jury returned their verdict, which were all wrapped up in a newspaper, and that at a subsequent time, after the court had adjourned, when he looked among those papers to secure some of his, he for the first time observed these depositions among them, and thence concluded they had been before the jury. On this he flatly states that they "were read by the jury," as if he had been in the jury room. Now, these depositions might have been put among the papers in the meantime. We do not know. We want certainly to nullify a tedious trial. This interested witness is not alone adequate to establish this important fact. Why did he not prove this by the clerk who would likely know? Is it his effort to defeat verdicts rendered in due course for just debts? If he did see these depositions for the first time after adjournment, it does not show that they were before the jury. If he saw them just when the jury returned, that utterly defeats his bill as to this ground of new trial, because the law com-

pelled him to make a motion then and there for a new trial, and state this fact as its ground. He did not. The law is that an application to equity for a new trial cannot be had on merely asking. He must prove good ground. *Black* v. *Smith*, 13 W. Va. 780. And the ground must be one which was unknown to the party before adjournment of court. *Alford* v. *Moore's Adm'r*, 15 W. Va. 597; *Meem* v. *Rucker*, 10 Grat. 506; *Faulkner's Adm'r* v. *Harwood*, 6 Rand. 126. I do not assert that, if these depositions were read by the jury, it would not be ground for new trial. I shall not discuss this, because their presence before the jury is not established; but in this connection it may not be without force, in denying the bill, to say that, if they were, it ought not to affect the case, but is a mere technical objection, to frustrate a fair trial, because they were taken before a commissioner, to whom the case was referred to take an account, and all parties agreed that they might be read in evidence, though they were not read on the trial; and to say, further, that the witnesses who gave them were examined on the trial, and it ought to appear that the depositions were different from their evidence. Did they hurt Graham more than the evidence of the witnesses? Did they contradict them? It does not appear. And how do we know the court did not, as it could, give leave to let them be carried out by the jury? This deposition matter is the core of the plaintiff's case, and there is nothing in that.

As to the second point,—prejudice in the community: If the case were a criminal case, we might more readily credit the existence of this prejudice; but it is hardly credible that a prejudice existed about actions of debt on two small promissory notes, sufficient to prevent justice in judge and jury. This is not a fact discovered after trial, and not one which ordinary diligence could not have revealed. Graham had lived at Elizabeth thirteen years, was mayor, and well acquainted with the people. If this "torrent of prejudice," so called by a witness, existed, he surely knew it. The cases had been pending five years. Strange that the roar of the torrent was not heard till the trial, and not then till after verdict! Graham ought to have asked a change of venue to get away from this prejudice; but

he took his chances, and lost, and on this ground wants to defeat a fair trial. Surely, too, as the trial lasted four days, the prejudice would crop out before the verdict. Why did not Graham make it a ground of new trial? "To sustain application to equity for a new trial, it should appear, not only that complainant could not lay his case before a jury, but why he did not move to set aside the verdict; and, though the province of a court of equity to inquire into alleged mistrial still exists, it has been circumscribed, and will not be exercised, unless it appears, not only that the verdict was erroneous, but that the plaintiff could not have had the mistake rectified by the use of proper diligence." Bart. Ch. Prac. 42; *Braden Case*, 18 W. Va. 286, (Syl. points 1, 3). But the truth is no such prejudice is shown as would at all affect the verdict. When asked whether he could not have made inquiry to find out prejudice and other things of which he complained, Graham answered, "No, sir; was too busy preparing my case and attending to my family." If this prejudice existed, was he willingly blind to it?

Third. As to prejudice of some jurors: This is one of the numerous charges of the bill selected by counsel as one of three relied upon, and there is no evidence to sustain it. The defense had right to peremptory challenge of jurors, and right to test them as to prejudice and partiality. There is no specification under this head,—no proof, no argument, because there is no proof.

Though not under the three heads of relief specified by counsel in their brief, complaint was made that the case was not continued for the absence of witness Bumgarner. It is only necessary to say that this was a subject for exception and writ of error.

The brief specifies also that certain pass books, bank books, notes, and checks, produced by Graham, and used by the attorneys at the bar, were locked up by order of the judge from Friday till Wednesday, during an adjournment, and the clerk refused access to them to Graham during that adjournment. Now, this is a general charge. Graham knew these papers well. But, surely, the judge would have given him time to examine them on reassembling, if asked. It is not shown that he asked indulgence. If any

harm was done in this, it was proper for a motion for a new trial and exception and writ of error.

I have written too much for the case; for really, on the merits, to speak mildly, it is barren of strength for relief. The whole face of the case shows it to be merely an effort, on no solid basis, to get rid of a fair trial and verdict.

It is cross assigned as error by appellee that the circuit court of Jackson had no jurisdiction.  As appellee gained the case, it does not prejudice it; but the question is raised.  The judge of the circuit in which Wirt County is included was interested in the case, and under Code, c. 123, s. 1, cl. 7, the suit was brought in Jackson County.  It is argued that while chapter 123 points out, in general, in what particular county a suit is to be brought, yet chapter 133, section 4, is a special enactment, and it limits an injunction suit to the county in which the judgment, act, or proceeding shall be, and, as this is an injunction, the suit must be in Wirt.  If so, a case might be long tied up, awaiting decision, because of the incompetency of the judge to act in the case.  True, our present provisions for special judges relieve such cases; but we must discard that consideration, as these enactments existed before those provisions.  If that argument is tenable, then nothing but the coming of a judge of another circuit by exchange would relieve the case.  Clause 7 says that "if a judge be interested in a case which, but for his interest, would be proper for the jurisdiction of his court, the action or suit may be brought in any county of an adjoining circuit."  In its well-chosen words and its known purpose, this clause imports that it controls, by its generality, the particularity of all other clauses of chapter 123, and also section 4, chapter 133, as to injunctions.  It says: "You may sue in an adjoining circuit in any case which, but for such interest, would be proper for the jurisdiction of his court."  It is an exception to other general provisions.  True, a judge of any circuit may award an injunction, but cannot hear it; for, after the award, the injunction must be heard in the county assigned to it by law.  I think that said injunction provision relates to pure bills of injunction, not to cases where other causes of action and relief would give jurisdiction in another county, the injunction being then merely ancillary.

It is not certain how we should classify this suit. It seeks a new trial, and, until that can be had, an injunction to the enforcement of the judgments. It may be said that, as the object is a new trial, it is not a pure bill of injunction, and therefore the injunction section does not control the jurisdiction; but as the object of a bill in equity for a new trial, so called, is not purely for a. new trial,—that is, as it does not give a retrial in the law court, but only directs an issue in the chancery suit as a step to inform the chancellor whether he should perpetuate or dissolve the injunction. —I regard the injunction the main relief, and I hold the case to be one of pure injunction. Equity does not grant a new trial in the law forum. It only gets control of the person by injunction, tries the merits by a jury, and then dissolves or perpetuates the injunction, that being the process by which it executes its function. *Railroad Co.* v. *Davisson*, 45 W. Va. 12, (29 S. E. 1028).

It is assigned as error that, on dissolution of the injunction, the court, under section 12, chapter 133, Code 1891, combined. principal, interest, and costs of the judgments up to ᵗhe date when the injunction took effect, and gave damages on the total at ten per cent. per annum from that date to the date of dissolution of the injunction against Graham and Dent, whereas, Dent did not sign the injunction bond. I think it is wrong to give that total award of execution against Dent. It should have been against Graham alone. Thus Graham would be liable upon the injunction bond, and both on the original judgment. But the effect of this is to give four per cent. for only about nineteen months against Dent,—much less than one hundred dollars,—and therefore we cannot reverse the case for that. *Lamb* v. *Cecil*, 25 W. Va. 288.

The court erroneously awarded half the. costs of the bank in defending this suit against both Graham and Dent. Dent was a party, it is true, but he did not sue out the injunction, or sign its bond, or seek to sustain the injunction by any pleading; and the award of costs against him I regard as wrong. One debtor cannot thus impose costs on another. But we have settled it that we will not reverse a decree where there is no other error than in the matter of costs *Long* v. *Perine*, 41 W. Va. 314, (23 S. E. 611); but

we will correct the decree so as to protect Dent against this erroneous imposition of costs. We must affirm the decree.

*Affirmed.*