# CHARLESTON.

MOUNDSVILLE, BENWOOD & WHEELING RAILWAY CO. v. WILSON, *et al.*

Submitted June 17, 1902.   Decided November 22, 1902.

1. PENAL BOND—*Allegation—Demurrer.*
    The words in a declaration on a penal bond that the defendants "the same to pay hath hitherto wholly neglected and refused and still do neglect and refuse," held to be a sufficient allegation of non-payment of the penalty on general demurrer. (p. 649).

2. NOTICE.
    Where the opportunity to know certain facts is as equally open to the defendants as to the plaintiff, it is not necessary to allege or prove notice thereof.   (p. 649).

3. JUDGMENT—*Reversal.*
    The failure to prove facts immaterial to the *prima facie* case made out by the plaintiff will not invalidate or be considered sufficient grounds for the reversal of the judgment founded on the evidence of the plaintiff alone.   (p. 650).

Writ of error and *supersedeas* to the Circuit Court, Marshall County.

Action by Moundsville, Benwood & Wheeling Railroad Com-

pany against Benjamin Wilson and J. W. Burchinal. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

Hooten & Hooten, for defendants in error.

J. B. McCluer, for plaintiff in error.

Dent, President:

J. W. Burchinal and others obtained a writ of error to a judgment of the circuit court of Marshall County, rendered on the 20th day of July, 1901, in favor of the Moundsville, Benwood and Wheeling Railway Company for the sum of $3,065.55, and assign the following errors:

*First,* The overruling of the demurrer to the declaration;

*Second,* The rejection of the plea of *ultra vires;* and,

*Third,* That the judgment is not sustained by the evidence.

The declaration is founded on a bond executed by the defendants with the following condition, to-wit: "The condition of the above obligation is such that whereas the above bound principal obligors and M. F. Cox, the stockholders of the Moundsville, Benwood & Wheeling Railway Company, did, on the twenty-first day of August, 1897, enter into a written agreement, under seal, with the above named obligees, the purpose of which was to provide for a re-organization of the said railway company (which is now in the hands of a receiver under an order of the United States Circuit Court) and for the payment of its debts by means chiefly to be furnished by the said obligees; And whereas it is, among other things, provided by the said agreement that the parties of the first part therein (corresponding with the principal obligors herein) shall well and truly pay off and discharge all the debts and liabilities now existing against the said company in excess of one hundred and fifteen thousand dollars, which last mentioned amount is to be settled in part by the use of one hundred thousand dollars, cash, which the second parties in said agreement are to furnish, and in part by the assumption or payment by the comtemplated reorganized company of a floating indebtedness of fifteen thousand dollars, and that the said first parties will give bond, with security, to assure the payment of such excess;

"Now, therefore, if the obligors herein, or any person for them,

shall well and truly pay off and discharge all of the liabilities now existing against the said Moundsville, Benwood & Wheeling Railway Company which shall not be satisfied by the use of said one hundred thousand dollars, cash, and the assumption by said contemplated reorganized company of fifteen thousand dollars thereof, then shall the above obligation be void, otherwise it shall be and remain in full force and effect."

The bond was payable to J. A. Miller and others, who assigned the same to the plaintiff for whose benefit and protection it was taken, its object being to indemnify the plaintiff against the outstanding indebtedness of the old company in excess of one hundred and fifteen thousand dollars. Such indebtedness must have presumptively at least been known to the defendants and also the fact that the one hundred and fifteen thousand dollars had been furnished. Hence averment of notice of these things was wholly unnecessary in the declaration. The defendants' means of knowing them were fully as great as those of the plaintiff, for the money could not have been furnished and the debts paid without their knowledge, as the business of the company was still under their control or that of their receiver until the contract for re-organization had been consummated. As soon as this was accomplished they became liable for the excess of indebtedness intended to be secured by the bond. The suit itself is notice and demand for the payment thereof. 14 En. Plead. & Prac., 1067.

It is claimed the declaration is bad for failure to aver non-payment of the penalty to the obligees before assignment. It is necessary to aver non-payment of the penalty. *Riggs & Co.* v. *Parsons, et al.,* 29 W. Va. 522; *State* v. *Phares,* 24 W. Va. 657; *Braxton's Adm'r* v. *Lipscomb,* 2 Mumf. 282. Still this averment need be only in the most general terms. *Cobbs* v. *Fontaine,* 3 Rand. 484. The averment in this case is in these words: "Yet the said defendants, although often requested have not nor has either of them as yet paid the said plaintiff the said sum of twenty thousand dollars or part thereof, but the same to pay hath hitherto wholly neglected and refused and still do neglect and refuse." This is undoubtedly broad enough to cover the obligees and assignors of the bond, although it might have easily been made more specific without the pleader becoming prolix.

It is true the assignors of the bond have suffered no damages

directly, yet as the bond was taken for the protection of the company in which they were pecuniarily interested, the whole damage contemplated by the giving of the bond has been suffered either by themselves or their assignee, and if not paid by the obligors must be lost by the stockholders of the plaintiff—a loss which the bond was executed to prevent.

Nor is the plea of *ultra vires* broad enough to cover if at all applicable to this case. The assignment was a mere nominal matter to enable the plaintiff to sue in its own name without controversy. Otherwise it would have had the right to sue in the names of the obligees for its use and benefit, as it was the real beneficiary of the bond. The assignment was but intended to simplify the legal proceedings for the enforcement of the bond. This bond was taken to protect the stockholders of the reorganized company, and hence the company from the payment or loss of the indebtedness of the old company in excess of $115,000.00. The real consideration for the assignment was that the plaintiff must pay this excess of indebtedness, and therefore having it to pay it was entitled to recover it from those who had obligated themselves to pay it for the relief of the reorganized company and its stockholders. This was strictly the business of the company, and in no wise in violation of its charter or the purposes for which it was created.

The various objections as to the sufficiency of the evidence are so fine-spun and technical that it is hardly worth while to notice them except as matter of respect to the able and learned counsel presenting them. It is insisted that there is no proof of notice. As heretofore shown, under the circumstances of this case no notice was necessary except in so far as the suit furnishes a notice and demand that defendants comply with their agreement and bond. The evidence of Alfred Paul, as manager of the reorganized company fairly shows that the obligees fully complied with their contract, and undoubtedly presents a fair *prima facie* case against the obligors. The defendants introduced no evidence.

The judgment is affirmed.

*Affirmed.*

## ON PETITION FOR RE-HEARING.

Additional opinion by DENT, PRESIDENT:

.On petition for rehearing defendant's counsel insist that some one or all of the legal quibbles raised by them are sufficient to reverse the judgment in this case, and without using their own capabilities for.settling these questions of easy solution, impose upon this Court the labor of doing so, in seeming disregard of the recommendation contained in section 2, Rule V, 23 W. Va., of the rules of this Court. The first point relied on is that the declaration fails to allege the non-payment of the penalty of the bond by Charles W. Vance in his lifetime, or by his administrator since his death. Neither the deceased nor his administrator is made a party to this action. In the case of *Reynolds* v. *Hurst,* 18 W. Va. 648, it was settled that it was only necessary to allege non-payment of the penalty by the defendants, in a suit on a joint and several bond, thereby expressly overruling the case of *Vandiver* v. *Hager,* 5 W. Va. 414, in which the contrary had been held. Not only is this good practice for the reasons there given, but for the further reason that the allegation of non-payment by the defendants is usually broad enough to cover any payment that they may be entitled to the benefit of by whoever made, for that which is done for a person, is the same as though done by himself. The declaration by use of the following language shows that the action is against the defendants alone, to-wit, "Whereby by force of the condition aforesaid of the said writing obligatory an action hath accrued to the said plaintiff to demand and have of and from the said defendants the said sum of twenty thousand dollars above demanded." As is said by JUDGE PATTON in the case of *Reynolds* v. *Hurst,* 18 W. Va. 656. "I understand the authorities to.be, that where one is sued on a *joint obligation,* the averment of promise and non-payment on the part of the one sued is sufficient without noticing the other and that defendant can neither by demurrer nor on the trial prevent a recovery; his only remedy is by plea in abatement. More especially is this true, where the obligation is joint and several. In suing on it in its several character in legal effect it is only the bond of the one sued, and as to that suit the *bond must be treated, as if no other person had executed it.*"

If another, not party to the suit has paid, this can be taken advantage of by plea and not demurrer. The second point is that the surety Doyle was not notified before suit that the plaintiff had been reorganized and had paid the one hundred and fifteen thousand dollars of indebtedness. There is nothing in this case that would require any such special notice. He assumed by his bond to pay all the indebtedness of the company in excess of the one hundred and fifteen thousand dollars. This indebtedness was then in existence, and it must be presumed was known to him, and there is no provision in the bond or otherwise that requires the plaintiff to give notice of the payment of the one hundred and fifteen thousand dollars prior to bringing suit for such excess. The suit itself is all the notice and demand that the law requires. Counsel confounds this case with one in which notice must be given before the liability becomes fixed. In short, to a case in which notice must be given or no liability exists, such as the protest of negotiable instruments. Failure to give notice in such cases destroys liability. But in this case notice has nothing to do with liability. It was made when the bond was executed on condition that the plaintiff pay or assume payment of the one hundred and fifteen thousand dollars. The fact of the payment or assumption of payment satisfies the condition, and no notice thereof is required other than that which the suit gives. Notice not being required to fix liability it is not necessary to allege or prove the same. The next point is that the plaintiff can only recover what its assignors might demand, being merely nominal damages.

It is plain that the assignors, the obligors, were not acting for themselves individually, but wholly in behalf of the plaintiff, and that the bond was taken wholly for its benefit, that is to secure the payment of its indebtedness in excess of one hundred and fifteen thousand dollars. This the obligors agreed to pay, but failing to do this, the plaintiff had it to pay. It was therefore equitably entitled to recover the same from such obligors, and this it might legally do under section 2, chapter 71, Code. The bond, however, was nominally payable to the obligees, and they to make the legal and the equitable rights correspond executed an assignment thereof to plaintiff. While the obligation seemingly is to pay the indebtedness in excess of the sum of one hundred and fifteen thousand dollars, as no creditor, debt or

payee is specified it was plainly the intention of the parties to the agreement that whenever the amount was ascertained that the obligors were bound to pay, that the same should be paid directly to the reorganized company as it would have to assume and pay such indebtedness to those entitled thereto. It being an indemnity that the reorganized company should not be required to pay more than one hundred and fifteen thousand dollars of the then existing indebtedness of the old company, and that such excess of indebtedness should be made good to it. Hence the true payee contemplated in both the bond and the agreement was the company when reorganized, to-wit: the plaintiff and not the various creditors of the company or the nominal obligees named in the bond. The agreement and bond both show that they were both made solely for the benefit of the reorganized company in this, that they were intended to relieve such company of the indebtedness for which it otherwise would be bound in excess of the hundred and fiften thousand dollars. It was the company that was to be finally relieved from this excess, not the obligees in the bond, and if not so relieved the company alone would have it to pay. The obligees took the bond payable to themselves because the company had not yet been reorganized. When reorganized as a matter of course, it was entitled to be substituted in the place of the obligees under the bond; otherwise the bond would be worthless for the purpose for which taken. The agreement and bond were in effect nothing more than a promise to pay to the company when reorganized the excess indebtedness of the old company, to relieve it from the payment thereof. To emphasize this meaning and purpose of the bond, the obligees named, transferred and assigned the bond to the company when reorganized, thus making it both in law and equity to be the true payee of the bond. So that the plaintiff had not only the right to recover nominal damages, but also the specific damages suffered by it and set forth in its declaration by reason of the failure of the obligors, to comply with their agreement. This proposition is too plain for argument. The alleged plea of *ultra vires* relates merely to the assignment, and as heretofore shown the assignment having been made simply to strengthen the legal title and make it correspond with the equitable title, was a mere nominal matter, not affecting the plaintiff's real right of recovery. Hence the plea is not broad

enough to present an issue in the case and the court did right to reject it. The next point is that Alfred Paull was not a competent witness to prove that he was the manager of the plaintiff, although placed on the witness stand for this purpose by the plaintiff. Defendant's counsel has the faculty of applying plain legal propositions to a wrong state of facts. It has been held by this Court that "Neither the declarations of a man nor his acts can be given in evidence to prove that he is the agent of another." *Rosendorf* v. *Poling,* 48 W. Va. 621 (37 S. E. 555); *G. & G. R. R. Co.* v. *Davisson,* 45 W. Va. 12, (29 S. E., 1028). It has also been held that an agent is a competent witness to prove his agency, 51 W. Va. 147, and this to establish his agency as against the principal. But it has never been held that the principal could not put its agent on the witness stand and by him establish such agency. The principal alone can deny the agent's authority, and when he authorizes his agent to speak for him as a witness, he is bound by his declaration. "Both the principal and agent are competent witnesses as to the existence or non-existence of the relation, the admission of the former being also competent evidence." 1 Am. & En. En. Law, (2d ed). 969. Mr. Paull was competent to prove that he was the general manager of the company after its reorganization, that it was reorganized and that to his knowledge the whole indebtedness of the old company amounted to one hundred and nineteen thousand six hundred and seventy dollars and sixty-two cents, all of which was paid or assumed by the company as reorganized, and it also appears that after allowing all just credits under the agreement and the bond, there was still due the company the sum of two thousand six hundred and twenty-six dollars and seventy cents with interest from October 1, 1898, of the excess of indebtedness which the defendants had promised, but failed to pay. This certainly made a clear *prima facie* case against the defendants and if they had any just defence thereto they should have presented it.

The only issue in this case is made up on a plea of covenants performed, not specifying acts of performance. Such a plea has been held insufficient. *Norfolk, &c., Co.,* v. *Suffolk Lumber Co.,* 92 W. Va. 413, (23 S. E. 737); Hogg's Pleadings & Forms, 309, 310; *Arnold* v. *Cole,* 42 W. Va. 663. Such a plea admits the plaintiff's case so far as properly pleaded, and is an

affirmative allegation of the performance thereof. It admits liability but claims satisfaction or payment. Hence it did not put in issue the reorganization of the company, nor the making of the bond or agreement, or the obligation of the defendants to pay the excess indebtedness demanded, but amounts to nothing more than a general averment that the defendants have paid such excess indebtedness. The burden of sustaining such plea, if good, is on the defendants. *Wheeling* v. *Black, et als.,* 25 W. Va. 266; *Roddke* v. *Core,* 21 W. Va. 530; *Douglass* v. *Central Land Co.,* 12 W. Va. 502; *Pate* v. *Spotts,* 6 Munf. 394.

Counsel present no error calling for a reversal of this case, and the judgment must stand.