## CHARLESTON.

SMITH POCAHONTAS COAL COMPANY v. BANNER MORRISON,
INFANT, et als.

Submitted February 27, 1923.   Decided March 20, 1923.

1.  JUDGMENT—*Generally Equity will not Impeach Judgment
    Merely on Ground of Procurance by Perjury or Forged
    Documentary Evidence.*

    Generally equity will not entertain a suit to impeach a
    judgment, otherwise regular, merely on the ground that it
    was procured by perjury or forged documentary evidence.
    (p. 362.)

2.  SAME—*Equity will not enjoin a judgment at Law for Fraud.
    Accident, or Surprise, Not Unknown to Party Before Judg-
    ment.*

    Equity will not enjoin a judgment at law and grant a new
    trial on the ground of fraud, accident, surprise or some ad-
    ventitious circumstances, unless the same, notwithstanding
    the exercise of ordinary diligence, was unknown to the
    party before judgment. (p. 363).

3.  SAME—*Equity will not Relieve Against Judgment on Ground
    of After Discovered Evidence Unless Due Diligence Shown,
    and That, if Such Evidence had been Offered. it Would Have
    Produced Different Result.*

    Equity will not relieve a party against judgment at law
    on the ground of after discovered evidence, or a defense, of
    which he was ignorant until after judgment was entered,
    unless he shows that by the exercise of ordinary diligence
    he could not have discovered  such evidence or defense, or
    that he was prevented from employing the same by fraud,
    accident or the act of the opposite party, unmixed with
    laches or negligence on his part.  And the after discovered
    evidence or defense must be of such conclusive character
    that, if it had been offered at the trial, it should have pro-
    duced a different result. (p. 363).

4.  SAME—*Equity Will not Grant Relief for Fact Ascertainable
    Before Judgment, New Trial Being Available Remedy.*

    If a party know, or by ordinary diligence, could have known,
    before a final judgment in the law court, a fact, he must
    make it the ground of motion for a new trial, and if re-
    fused, go to an appellate court, as equity will not grant
    him a new trial for it. (p. 363).

Appeal from Circuit Court, Raleigh County.

Suit by the Smith Pocahontas Coal Company against Banner Morrison, infant, and others, to enjoin the enforcement of a judgment recovered by defendant. From a decree for plaintiff, defendant named appeals.

*Reversed, and bill Dismissed.*

*Strother, Sale, Curd & Tucker,* for appellant.
*J. Albert Toler, Ashton File* and *W. W. Goldsmith,* for appellee.

LITZ, JUDGE:

This suit in equity was brought in the circuit court of Raleigh county May 13th, 1921, for the purpose of enjoining the enforcement of a judgment at law recovered by the defendant Banner Morrison against the plaintiff Smith Pocahontas Coal Company in an action at law in the circuit court of Wyoming County, December 2d, 1919, and obtaining a new trial in that case. The judgment had been affirmed by decision of this Court of May 8th, 1921, reported in 88 W. Va. 158. This judgment was for $8,000.

The lower court entered its final decree in this cause granting the relief prayed for therein by Smith Pocahontas Coal Company, and from that decree this appeal was obtained.

In his declaration in the law action, brought to recover damages for injuries sustained by him while in the employ of Smith Pocahontas Coal Company as brakeman in its mine, in relation to these injuries, Banner Morrison averred that he, "Was mashed or thrown between the cars, or between the cars and the rib of the coal, so that he was mashed, mutilated and otherwise greatly injured; that he suffered great pain and anguish and still continues to suffer; that as a result of said injuries he was confined in the hospital for a large number of months and it was necessary for him to expend large and divers sums of money for medical treatment; and that he will be incapable so long as he lives of doing the same amount of physical work and labor, or mental work and labor, which he otherwise could have done."

At the trial on the 21st day of November, 1919, he testified in relation to his injuries: "Well, I was going up in a room and jumped off to throw a switch and when I jumped off of the car the rib was so close to the track that I hadn't room to get out of the way and it caught me in the back and rolled me in the rib of the mine—mashed me up through my back, kidneys, *spinal,* and also ruptured me." He further states that he was scarred and bruised from his hips to his shoulders, had suffered greatly, and was unable to work but little; that he passed blood through his bowels and urine for two or three months after the accident; that prior thereto he was sound in health but had since been subject to frequent "spells" which the doctors pronounced epilepsy; that he had one of such "spells" a few days before the trial, and would sometimes have as many as two or three a night, the attacks growing worse; that he had been treated by Dr. Shackleford and Dr. Smith at Martinsville, Virginia, and also at Lewis-Gale hospital at Roanoke, where he stayed a week and a half, or two weeks. He testified also, in answer to a question on cross-examination as to what Doctors Gale and Whitman at Roanoke told him about his condition, that they said he had "kidney and spinal trouble and would never be able for anything without an operation," and that at that time his heart and nerves were too weak for him to undergo an operation.

His father, A. T. Morrison, testified in substance that as a result of the accident Banner Morrison was bruised from about his hips to his shoulders; that there seemed to be a bruised "stripe" as broad as the hand all the way up his back to the shoulders, and "a great, broad, black place which looked like it had been bruised or mashed and had turned a little yellow or green, running from his backbone out to the point of his shoulders"; and skinned places about the size of the thumb nail along the backbone; that he complained of pain and hurting, and for two months after the accident was unable to control his bowels or urine, passing blood nearly six weeks; that his spine was curved and one of his testicles enlarged; that Dr. Simonds first treated him and then Dr. Lee, under whose advice he was sent to Lewis-Gale hospital at Roanoke for about fourteen days; that Dr. Shackleford and Dr. Charles Smith

also attended him; that he had "spells", which were gradually growing worse, that affected his mind, causing him great pain and suffering.

On cross-examination, in answer to a question calling for the opinion of the doctors at Lewis-Gale hospital, he stated: "Well, sir, the doctor in Roanoke said it was,—Dr. Gale,—he examined him with his X-ray and he said there was one of his kidneys mashed and there was an abscess on it, and it would be impossible for him to remove it at that time; that the boy wasn't in condition for it to be removed, he was too weakly and too nervous, and we carried him home and kept him to see if he wouldn't outgrow it." He testified further on cross-examination, when asked what these doctors pronounced the "spells", "Well, sir, now I don't know but I believe he said they were epilepsy: I am not posted on them big words and I can't explain them".

On re-direct examination, in answer to the question as to what Dr. Gale said, if anything, caused epilepsy, he answered: "He said it might be caused by mashing of the spinal cord on the backbone, that was what Dr. Gale and Dr. Whitman told me".

The defendant, Banner Morrison, also introduced on the trial the deposition of Dr. Charles F. Smith, of Martinsville, Va., who had treated him at his home in Bassetts, Va., to the effect that he had examined defendant, finding two scars immediately over the backbone, at the points of which there were slight depressions, and also marked tenderness in that region, which satisfied him that there was some pressure upon the membrane which holds the spinal cord; that he was suffering from a well marked case of epilepsy, thought to be of the traumatic type; and that in his opinion the condition of Banner Morrison as described was caused by a blow or by being mashed, and, further, that the disease of epilepsy, from which he was suffering, was the result of an injury to the spinal cord produced in such way.

The plaintiff, Smith Pocahontas Coal Company, introduced two local doctors who testified that in their opinion epilepsy was not caused by the injury to the back and spine of Banner Morrison in the mine; and that such malady could not result

from physical injury except an injury to the head of such nature as to produce fracture and depression of the skull.

About the 8th of August, 1919, more than three months before the trial, D. D. Moran, attorney at law and counsel for the plaintiff, Smith Pocahontas Coal Company, went to Martinsville, Va., and the little town of Bassetts, nearby, where the defendant lived with his father, A. T. Morrison, who was then seventy-eight years of age, for the purpose of investigating the case. On that occasion, at the home of A. T. Morrison, Moran discussed the matter with this old man. Moran says that he inquired if there was a record of the boy's age in the family Bible, whereupon the Bible was shown him containing such record; that he then remarked to the father that the boy looked all right physically; in reply to which, and certain questions propounded by Moran, the father stated that the boy was in a serious state of health, "He passes blood, his kidneys are out of order and he is just broken up and in bad condition"; that he had doctors in Roanoke, Virginia, to treat him, who advised that he was in "bad shape and that nothing could be done for him," *but didn't remember the names of these doctors;* that when he "exerts himself or becomes overheated, he faints away, he just loses control of himself".

Moran states that, upon being told by the father of the serious physical condition of the boy, he treated the matter lightly and made no further inquiry of any one, although the Morrisons lived in a little country village where it is likely that almost any one could have given him further information, if any existed.

It is claimed by the plaintiff that the defendant was sent to Lewis-Gale hospital at Roanoke, on account of injuries sustained by his running against a post in the village of Bassetts on February 2d, 1919, and not for treatment for epilepsy resulting from the injuries sustained in plaintiff's mine; and that he had been struck on the head with a stick by one Jesse Manning some time after his injuries in the mine. The following are the grounds stated and relied on by plaintiff for relief:

"FIRST: By reason and on account of fraud and deception practiced upon this plaintiff by Banner Morri-

son and A. T. Morrison, his father, whereby they did intentionally deceive and mislead D. D. Moran, counsel for the defendant company in said law action by falsely and fraudulently representing to him at Bassetts, Virginia, in the month of August, 1919, that the then alleged bad physical condition of Banner Morrison was caused by and the result of injuries alleged to have been received by him in this plaintiff's coal mine, while therein employed during the month of December, 1917; that he had been examined and treated for said alleged injuries by doctors in the City of Roanoke, whose names the said Morrisons, well knowing, fraudulently withheld and concealed from the said Moran, and then and there, well knowing that the said Banner Morrison had during the month of February, 1919, sustained serious, and what were then believed to be fatal, injuries by running into and against a post at Bassets, Virginia, and that he had been treated on the night of such accident for such injuries by Dr. R. R. Lee, of Martinsville, Virginia, and was taken the next day to the Lewis-Gale Hospital, at Roanoke, and therein treated for such injuries, instead of for the injuries alleged to have been received by him in the mine, the said Morrisons did, for the purpose and with the intent to mislead and deceive the said Moran, fraudulently conceal and withhold such facts from him, whereby said Moran was misled and deceived and made to believe that the only injuries which the said Banner Morrison had received and for which he had been treated by such doctors were the injuries alleged to have been sustained by him in the plaintiff's mine and by means of such fraud and deception the said Morrisons did prevent the said Moran from seeing and consulting the doctors who had treated the said Banner Morrison for the injuries received by him at Bassets, and from obtaining from them information of and concerning the same.

"SECOND: That Banner Morrison and A. T. Morrison, his father, combined and conspired together to defraud this plaintiff, the defendant in said action at law, through and by means of the recovery of a judgment therein against it, and in favor of Banner Morrison for a large sum of money, which by law he was not entitled to recover, by means of wilful and corrupt perjury, and that in pursuance and furtherance of such combination and conspiracy the said Morrisons did, upon the trial of said action, commit wilful and corrupt perjury while testifying as witnesses therein, and that by means of such perjury did procure the judgment complained of to be rendered.

"THIRD: After-discovered evidence."

We will discuss them in their order.

(1) The first ground being predicated upon alleged fraud on the part of the defendant, a sixteen year old boy, and his father, seventy-eight years of age, to mislead D. D. Moran, as counsel for the plaintiff in the preparation of its case, what are the facts proven to support this charge? There are none, except the statement by the father, as claimed by Moran, that he did not remember the names of the doctors who treated his boy at Roanoke. Moran certainly could not have been misled in the belief that the injuries to defendant in the plaintiff's mine were of a minor nature from what is claimed to have been an exaggerated statement by the father to Moran of the impaired physical condition of the boy due to such injuries. If Moran believed that the father was magnifying these injuries, as he now claims, the duty of further investigation was thereby made more apparent to him. He could easily have obtained the names of the doctors from some of the other members of the family or the neighbors. He didn't even ask the boy himself. Besides, the old man says he gave him the names of the doctors. The statement of the father to Moran, and those made by him on the trial as to the physical condition of the boy, are substantially the same.

The alleged fraudulent withholding from Moran of the supposed injuries to defendant from running into the "post" is without force, for the following reasons: (1) the incident is not satisfactorily established; (2) the resulting injuries, if any, are not shown to have contributed to the impaired physical condition of defendant in evidence at the trial; (3) there was no duty, under the circumstances, to inform Moran; and (4) the plaintiff, Smith Pocahontas Coal Company, could have by reasonable diligence made the discovery.

"Equitable relief from a judgment obtained after trial in an action at law is granted ordinarily only where the fraud, accident, surprise or other adventitious circumstances by or through which it was procured was unknown to the party thereby wronged, and beyond his control, however diligent he may have been." *Wyatt* v. *Wyatt,* 79 W. Va. 708, 711.

(2)   What of the second ground? This rests upon the theory that some of the statements in the testimony of the father on the trial were false; and that he had conspired with the boy to make these statements for the purpose of obtaining the judgment, as shown by the fact that he had made the same to Moran, attorney for plaintiff, more than three months before the trial.  It is sufficient answer to this charge, if true, to say that the plaintiff, through its attorney D. D. Moran, more than three months prior to the trial was apprised of these statements and should have been prepared to meet them.

"There is an obligation on litigants to prepare for trial and be ready to meet and expose perjury then and there." 15 R. C. L. 77.

"It is a rule of law, on the subject of New Trials, that a party going voluntarily to trial goes at his peril, and he cannot have a new trial merely to give him an opportunity of impeaching the testimony of a witness of which he was apprised, or could have been apprised beforehand of the very purpose for which he was to be called." *Warehouse* v. *Pridemore,* 55 W. Va. 464. .

(3) The further claim is made that the plaintiff is entitled to the relief granted it by the lower court on the ground of the alleged after discovered evidence of Dr. Lee, and Dr. Gale, Dr. Whitman and others connected with the Lewis-Gale hospital contradicting the testimony of Banner Morrison and his father in the law trial; and the new evidence relating to certain injuries to Banner Morrison from being struck with a stick by one Jesse Manning and running into a post on February 2d, 1919.  The evidence relied on, briefly, is as follows:

(a) Dr. Lee states in effect that he was called to attend Banner Morrison at Basetts, Va., on the night of February 2d, 1919, and found him lying in the depot suffering intensely; that being informed he had about an hour previously run against a post which struck him in the region of the stomach, he thought the impact had caused rupture of the bowels, and considered him in a very critical condition; that he gave him several injections of morphine and advised that he be sent immediately to Lewis-Gale hospital, which was done; that he did not observe any swelling in the bowel or abdomen, or any wounds or abrasions of his body; that he never treated Morri-

son at any other time or pronounced his trouble epilepsy, and did not know what caused his suffering on that occasion except from what he was told of his running into the post.

(b)    The evidence of Drs. Gale and Whitman, and others connected with the Lewis-Gale hospital, is in substance to the effect that the records of the hospital show that Banner Morrison had been received February 3d, 1919, and discharged February 5th, 1919; that the diagnosis disclosed by the records showed "Internal injuries sustained by lick in the epigastric region," (based upon information), urine normal, and slight elevation in the total white blood count, which is considered of no consequence; that on the account of the influenza epidemic then raging complete records were not made; that he was not x-rayed; and that they did not make any of the statements attributed to them by Banner Morrison and his father at the trial in the law case as to his physical condition and its causes.

(c)    It is claimed that Banner Morrison, about dark on the 2d of February, 1919, in the village of Bassetts, while playing "base" with, and being chased by, a number of other boys, ran against a post or railroad cross-tie planted in the ground. This post stood three or four feet above the ground.    He fell fifty to seventy-five feet from the post unconscious, and in great pain and agony.    This was the occasion on which Dr. Lee attended him.    The evidence of those present is conflicting as to whether or not he struck the post.    Dr. Lee testifies that in his opinion if he had struck hard enough to produce the condition in which he found him, he would have fallen at the post. The diagnosis at Lewis-Gale hospital would indicate that he did not strike the post, or if he did, no serious consequences resulted.    It is therefore immaterial whether or not he came in contact with the post, as it is not shown that he was in any way permanently affected thereby; and it did not produce epilepsy as none of the doctors claimed that such disease could be caused by an injury to the abdomen or epigastric region. Besides, it is claimed that he was previously afflicted with epilepsy.

(d)    It has also been discovered that Banner Morrison was struck on the back of the head with a stick by one, Jesse Manning, after his injury in the mine.    Manning, and young George Shively, say that when Morrison was hit he fell and lay

unconscious for two hours.  Morrison and another witness
present say that he staggered and fell, but was not seriously
hurt, and got up immediately and ran after Manning.   This
incident is not shown to have resulted in any physical impair-
ment of Banner Morrison, nor to have produced any of the
bodily ills complained of by him.

Counsel for plaintiff evidently realize that the alleged after-
discovered evidence has no material bearing on the question of
the defendant's physical condition resulting from the injuries
in the plaintiff's mine, which was the issue in the law trial.
In this connection they say: ''No effort was made in this cause
to inquire into the question of the extent of the injuries Morri-
son sustained in the coal mine, because that question is to be
litigated on the new trial of the action at law.'' This will not
do.  In order to disturb the verdict and judgment the alleged
new evidence must appear here and be of such a conclusive
character that if it had been offered in the law trial it should
have produced a different result. *Bloss* v. *Hull,* 27 W. Va. 503.

The new evidence does not refute the claim that the defend-
ant is afflicted with epilepsy, nor does it show that if he has
such disease it resulted from some other cause than the injuries
sustained by him in the plaintiff's mine.   None of it would be
of probative value on the issues in the law case, except the ex-
pert evidence of Doctors Gale and Whitman to the effect that
epilepsy will not result from an injury to the spinal cord; and
this is merely cumulative to the testimony of the local doctors,
Wood and Hunter, who gave similar evidence in behalf of
Smith Pocahontas Coal Company at the trial.   Besides, Dr.
Lee, one of the witnesses introduced in this case for the
plaintiff, concurs with Dr. Smith on this question.

But assuming that this evidence is material and of a de-
cisive character, it could have been, by the exercise of reason-
able diligence on the part of plaintiff, discovered before the
trial, or after trial and before judgment, for the following
reasons:

(a)   The declaration in the law case gave the Smith Poca-
hontas Coal Company notice of the seriousness of the injuries
complained of.

(b)   A. T. Morrison, the father of Banner Morrison, more
than three months before the trial, also advised D. D.

Moran, as counsel for this company. Counsel for plaintiff in their brief admit that, "When Moran inquired as to the physical condition of Banner Morrison, he was led to believe that it was very bad; and that it was due to, and the result of, the injuries received by him in the coal mine." Notwithstanding this, Moran says he made no further inquiry or investigation, simply because the old man didn't remember the names of the doctors who treated his son at Roanoke.

(c)    Dr. Smith's deposition, in which he states that Banner Morrison is afflicted with epilepsy resulting from the injuries to his spinal cord sustained in plaintiff's mine, was taken on the 13th day of November, 1919, eight days before trial; and notwithstanding the plaintiff had due notice of the taking of this deposition and that the same would, in all probability, disclose the physical condition of Banner Morrison, and with notice also imparted to it, through its counsel, D. D. Moran, by the father of Banner Morrison three months previously, of such physical condition, it made no appearance.

(d)    Although this deposition is presumed to have been filed in the circuit court clerk's office of Wyoming county several days before the trial, J. Albert Toler, of counsel for plaintiff, testifies he did not inspect it until after the trial had begun.

(e)    He testifies also that at the time defendant and his father gave evidence on the trial: "I didn't believe his (Banner Morrison's) story as to having passed blood, and the kidney trouble, and what he said the doctors had told him. I didn't believe the old man's story on that score." Notwithstanding this disbelief, and the fact that it could have been verified in a few hours by communicating with Dr. Gale and Dr. Whitman, at Lewis-Gale hospital, Roanoke, and Dr. Lee at Martinsville, plaintiff and its counsel remained idle until a year and a half later, when the judgment had been affirmed by this Court, before starting investigation.

A party relying upon newly discovered evidence must clearly show by facts stated the exercise of due diligence, without avail, to discover the same before trial.  *Edwards* v. *Keifer* 92 W. Va. 650 and *Francois Coal Co.* v. *Troll Coal Co.* 93 W. Va. 229.  The facts and circumstances here establish a complete lack of diligence on the part of plaintiff.

"Where a complainant asks an injunction against the judgment, alleging in his bill that he is now able to prove the matter of his plea or defense of the action at law, which he was unable to prove in the trial, and does not allege some reason founded in fraud, accident, mistake or some adventitious circumstance beyond his control, as the cause of such failure of proof, the injunction should not be allowed." *Warehouse Co.* v. *Pridemore, supra.*

"Equity will not relieve a party against a judgment at law on the ground of after discovered evidence, or a defense, of which he was ignorant until after the judgment was rendered, unless he shows that by the exercise of ordinary diligence he could not discover such evidence or defense, or that he was prevented from employing the same by fraud, accident or the act of the opposite party unmixed with laches or negligence on his part." *Bloss* v. *Hull, supra.*

To have obtained a new trial before the entry of the judgment on the ground of newly discovered evidence, it would have been necessary to show:

(a)    Discovery of such evidence after trial;

(b)    Inability to discover same before trial by the exercise of reasonable diligence;

(c)    Its materiality; and,

(d)    That it was not cumulative.

*Butts* v. *Butts,* 81 W. Va. 55; *Edwards* v. *Keifer, Francois Coal Company* v. *Troll Coal Company, supra, and cases cited.*

A stronger case must be made now for such relief, for, as already noted, plaintiff, by the exercise of reasonable diligence, should, if not before, have discovered such evidence after trial, pending motion to set aside the verdict.

"If a party know, or by ordinary diligence could have known, before a final judgment in a law court, a fact, he must make it the ground of a motion for new trial, and, if refused, go to an appellate court, as equity will not grant him a new trial for it." *Graham* v. *Citizens' Nat. Bank of Parkersburg,* 45 W. Va. 701.

The most that can be claimed by the plaintiff is that the defendant and his father made false statements in their evidence on the trial. This will not justify the relief sought.

"Equity will not, according to the weight of authority,

entertain a suit to impeach a judgment otherwise regular merely on the ground that it was procured by perjury or forged documentary evidence." *Wyatt* v. *Wyatt, Warehouse Co.* v. *Pridemore, supra;* 23 Cyc. 1028; 1 Black on Judgments, sec. 372.

For the foregoing reasons the decree of the circuit court is reversed, and plaintiff's bill dismissed.

*Reversed and bill dismissed.*